M. Jonathan Hayes (Bar No. 90388)
Matthew D. Resnik (Bar No. 182562)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
jhayes@RHMFirm.com
matt@RHMFirm.com

*Attorneys for Professional*
Robert Hindin

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO DIVISION

|  |  |
|---|---|
| In re | Case No. 1:15-bk-13134-MB |
|  | Chapter 11 |
| MOHAMMAD S. NAMAZIKHAH, | **FIRST AND FINAL APPLICATION BY ROBERT HINDIN & ASSOCIATES, APLC, A PERSONAL INJURY LAW FIRM, FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF COSTS FOR LITIGATING DEBTOR'S PERSONAL INJURY CLAIMS; DECLARATIONS OF ROBERT HINDIN AND MOHAMMAD S. NAMAZIKHAH IN SUPPORT THEREOF** |
| Debtor. |  |
|  | Date:  January 19, 2022 |
|  | Time:  1:30 p.m. |
|  | Place: 21041 Burbank Boulevard |
|  |           Woodland Hills, CA 91367 |
|  |           Crtrm 303 |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES**

**BANKRUPTCY JUDGE; OFFICE OF THE UNITED STATES TRUSTEE AND ITS**

**COUNSEL OF RECORD; AND ALL PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that on January 19, 2022 at 1:30 p.m., or as soon

thereafter as the matter may be heard, in Courtroom 303 of the above-entitled United

States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, CA

91367, Robert Hindin will respectfully move the Court for an order approving this First and Final Interim Application of Robert Hindin & Associates, APLC  (the "Firm" or "Applicant") for the Debtor Mohammad Sadegh Namazikhah, for its fees and costs for litigating Debtor's two personal injury claims (*Namazikhah v. Holland*, Case No. BC 609141) (the "First Personal Injury Matter") and (*Namazikhah v. International Coffee & Tea, LLC,* BC 687349) (the "Second Personal Injury Matter").

This Application is made on behalf of the Firm pursuant to 11 U.S.C. §330, for allowance of $55,981.33 for legal services rendered and costs advanced by the Firm, as follows:  First Personal Injury Matter, $24,400.00 plus costs of $4,598.50; Second Personal Injury matter, $23,333.33 plus costs of $3,650.00.

This Motion is based upon the Notice of Motion; 11 U.S.C. §330 that reads as follows: (a) (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 — (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses. (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested. 11 U.S.C. §330(a).

PLEASE TAKE FURTHER NOTICE that pursuant to *Local Bankruptcy Rule 9013-1*, any party opposing the relief sought by the Application must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Application.  Any factual allegations set forth in such written response must be supported by competent and admissible evidence.  Any response or opposition to the Application must be filed with the Court and served on the Debtor's

**RESNIK HAYES
MORADI LLP**

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel at least fourteen (14) days prior to the scheduled hearing date on the Application (not excluding Saturdays, Sundays or legal holidays).  Such responses, if any, must be served on the Debtor's Counsel at the address noted in the upper left-hand corner of the first page of this notice.  Pursuant to *Local Bankruptcy Rule 9013-1*, any response not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested by the Application.

WHEREFORE, the Firm respectfully requests that the Court enter its Order allowing the fees and expenses requested by the Firm as set forth herein, and granting such other and further relief as is just and proper under the circumstances.

Dated:  December 9, 2021                         **RESNIK HAYES MORADI LLP**

By: _____**/s/ M. Jonathan Hayes**_____
**M. Jonathan Hayes**
**Matthew D. Resnik**
*Attorneys for Professional*
Robert Hindin & Associates

**RESNIK HAYES
MORADI LLP**

## MEMORANDUM OF POINTS AND AUTHORITIES

ROBERT HINDIN & ASSOCIATES, APLC ("Applicant" or the "Firm"), personal injury counsel for MOHAMMAD NAMAZIKHAH (the "Debtor"), applies to the Court as follows:

### 1.    INTRODUCTION

This Application is made on behalf of the Firm pursuant to 11 U.S.C. §330, for allowance of fees for services rendered for litigating personal injury claims of $55,981.33 for legal services rendered by the Firm, as follows:  First Personal Injury Matter, $24,400.00 plus costs of $4,598.50; Second Personal Injury matter, $23,333.33 plus costs of $3,650.00.    The fees have already been paid as is explained below.

### 2.    BACKGROUND INFORMATION IN COMPLIANCE WITH LOCAL BANKRUPTCY RULE 2016-1(1)

1.    Name and Location of Applicant: Applicant is Robert Hindin & Associates APLC, and Robert Hindin is located at 11400 West Olympic Boulevard, Ste. 1400, Los Angeles, California 90064.

2.    Type of Service Rendered: Applicant was employed as Special Counsel to handle two personal injury matters for the Debtor.

3.    Date Chapter 11 Case was commenced: Debtor commenced this case by filing a Chapter 11 Petition on September 20, 2015.

4.    Date Employment Commenced and Date of Authorization: The Debtor filed an Application to employ his personal injury counsel Robert Hindin as of August 25, 2017. DOC 103].  The Application described only the First Personal Injury Matter as is further set forth below.

5.    Date of Last Fee Application: None.

6.    Summary of Fees and Costs Previously Allowed and Paid.

a.    Amount of Advanced Fee Payment:  None

RESNIK HAYES
MORADI LLP

b.        Amount of Advanced Fee Payment Remaining: None.

c.        Amount Actually Paid Pursuant to Prior Applications: N/A.

d.        Total Amount Remaining to be Paid Pursuant to Prior

Applications: N/A.

e.        Total Amount Allowed Yet Reserved Pending Final Fee

Application: N/A.

Source of Fee Payment and Cost Reimbursement:   The fees have already been paid as is explained below.

Compliance with Local Bankruptcy Rule 2016-1(k): Mr. Hindin has reviewed the requirements of Local Bankruptcy Rule 2016-1(k).  This Application substantially complies with this rule.

**3.      <u>OVERVIEW OF THE BANKRUPTCY CASE</u>**

Dr. Mohammad Sadegh Namazikhah is 73 years old.  He filed his chapter 11 petition on September 20, 2015.  His general counsel in the bankruptcy case at all times was Raymond H. Aver.

The chapter 11 case was dominated by litigation involving creditor Abraham Ghorbanian, a competitor of Dr. Namazikhah.  Mr. Hindin was active in that litigation but does not seek allowance of any fees related to that case.

Mr. Aver filed an Application to Employ Mr. Hindin on August 25, 2017 [Doc. 103].  The Application disclosed that Mr. Hindin would function as Special Counsel assisting Mr. Aver in the Ghorbanian litigation and, in addition would continue to represent Dr. Namazikhah in the First Personal Injury Matter.

During the pendency of the chapter 11 case, Dr. Namazikhah slipped and fell at a Coffee Bean and sustained injuries.  He asked Mr. Hindin to represent him in that case as well.  Mr. Hindin did so not realizing he should have amended the Employment Application to advise the court and creditors of the new tasks he took on.  He relied on

**RESNIK HAYES
MORADI LLP**

Debtor's counsel to either file the required application or supplement or to advise him he must do it himself.

The chapter 11 case was converted to chapter 7 on December 20, 2019. David Seror was appointed the trustee.

**4.    DESCRIPTION OF SERVICES BY CATEGORY**

The services rendered on behalf of the Debtor included the following:

**A.    *NAMAZIKHAH V. HOLLAND*: AUTO ACCIDENT CASE - FIRST PERSONAL INJURY MATTER**

As set forth in the Declaration of Robert M. Hindin attached:

Robert Hindin & Associates, APLC was the attorney of record for Dr. Namazikhah in a case entitled *Namazikhah v. Holland*, case number BC609141, in the Los Angeles Superior Court - Central District, which was filed on December 9, 2015, concerning an auto versus auto incident that occurred on December 11, 2013. This case is here referred to as "First Personal Injury Matter".

Dr. Namazikhah was involved in an auto accident on December 11, 2013, a year and a half or so before the chapter 11 petition was filed. The accident occurred on Topanga Canyon Boulevard when Dr. Namazikhah's car was hit by the car of Delbert Holland.

As a result of the accident, Dr. Namazikhah suffered from severe pain in his neck, right hip, complete tear of the rotator cuff of his shoulder, tear of the superior labrum, severe injury to the lower back and both sacroiliac joints.

Dr. Namazikhah retained Mr. Hindin to represent him against Mr. Holland on December 17, 2013. After two years of negotiations with the insurance company to no avail, Mr. Hindin prepared and filed a complaint, began discovery and trial preparation.

**RESNIK HAYES
MORADI LLP**

On October 25, 2017, the parties attended mediation and reached a settlement in which the defendant paid $61,000 to Dr. Namazikhah.  Mr. Hindin advised Mr. Aver of the settlement on or about October 30, 2017.

An accounting of the distribution of the proceeds is as follows:

| Payments of Liens | $23,000.00 |
|---|---|
| Hindin 40% | 24,400.00 |
| Hindin costs | 4,589.50 |
| Balance to Dr. Namazikhah | 9,410.50[1] |
| Total | $61,000.00 |

Dr. Namazikhah approved the distribution on or about November 28, 2018.  Mr. Hindin, not realizing the settlement might need to be approved by the bankruptcy court or that the bankruptcy court needed to approve his fees before he actually took the funds, distributed the proceeds as set forth above.

The court ruled at a hearing on November 17, 2021 that the auto accident was exempt and that turnover of the proceeds of that claim was exempt.  Mr. Hindin includes the request to insure full disclosure of the matter.

**B.** ***NAMAZIKHAH v. COFFEE BEAN & TEA, LLC*: SLIP AND FALL CASE – SECOND PERSONAL INJURY MATTER:**

Robert Hindin & Associates, APLC was also the attorney of record for Dr. Namazikhah in a case entitled *Namazikhah v. International Coffee & Tea, LLC*, case number BC687349, in the Los Angeles Superior Court - Central District, which was filed on December 18, 2017, concerning a slip-and-fall incident that occurred on August 24, 2017.  This case is here referred to as "Second Personal Injury Matter".

---

[1] The payment to Dr. Namazikhah was reduced, with his permission, by $4,000 representing costs Mr. Hindin had advanced in the *Ghorbanian v. Namazikhah* litigation.

**RESNIK HAYES MORADI LLP**

On August 24, 2017, Dr. Namazikhah suffered serious injuries while walking out of the Coffee Bean Tea & Leaf Store located at 10612 National Boulevard, Los Angeles 90034. Dr. Namazikhah was carrying a cardboard tray holding three beverages at the time of the injury.

On September 30, 2017, Dr. Namazikhah retained Mr. Hindin on a contingency fee basis to represent him in Second Personal Injury Matter. Paragraph 4 of the Fee Agreement states that Dr. Namazikhah would be responsible for a list of related costs and expenditures advanced by the Firm on his behalf in prosecuting his case, and that the Firm shall be reimbursed for such costs and expenditures from the recovery of the Second Personal Injury Matter, whether by settlement or through court trial. Paragraph 5 of the Fee Agreement states that the settlement check shall be made payable jointly to Dr. Namazikhah and the Firm.

Mr. Hindin believes he advised Mr. Aver about this new matter. Mr. Hindin spent considerable time reviewing the facts that led to Dr. Namazikhah's fall; obtaining information regarding the responsible parties; and obtaining information regarding the premises where the incident took place. He and the Firm conducted a thorough investigation and discovered the owner of the store and the property owner of the parking lot. He retained an expert to determine whether there was a crack in the curb and a chip of the curb was missing, when Dr. Namazikhah stepped down from the curb.

As a result of the incident, Dr. Namazikhah sustained serious injuries that required him to have surgery on his right rotator cuff and having physiotherapy and acupuncture treatment.

During the course of the litigation, the defense strategy was to attack Dr. Namazikhah and claim that his injury was caused by his own negligence and that he should recover nothing. After a year of litigation, Mr. Hindin was able to convince the other party to go to mediation with John K. Raleigh, Esq. at ARC.

Mr. Hindin attended mediation with Dr. Namazikhah for six hours on January 15, 2020 and was able to obtain a settlement for $70,000.00.

**RESNIK HAYES
MORADI LLP**

Following is a summary of the distribution of the $70,000 in settlement proceeds. Copies of the checks are attached as Exhibits "10" to "14" of Declaration of Robert Hindin.

| Payments of Liens | $36,200.00 |
|---|---|
| Hindin 40% (lowered to 33%) | 23,333.33 |
| Hindin costs | 3,659.00 |
| Payment to Mr. Aver | 5,000.00 |
| Payment of Aver deposition costs | 3,653.59 |
| Balance in Client Trust Account | 2,654.08 |
| Total | $70,000 |

Mr. Hindin advised Mr. Aver of the settlement by telephone on or about January 17, 2020. Mr. Aver advised Mr. Hindin that he would take care of getting the settlement approved and that Mr. Hindin could distribute the proceeds as set forth above. Mr. Aver requested of Mr. Hindin that he send $5,000 of the proceeds to him and issue a check for $3,653 to cover the cost of a court reporter previously paid by Mr. Aver relating to the Ghorbanian matter. Copies of the checks are attached hereto.

Dr. Namazikhah approved the distribution on or about January 15, 2020. Mr. Hindin, not realizing that the bankruptcy court needed to approve his fees before he actually took the funds, distributed the proceeds as set forth above.

5.    <u>**RESPONSE TO DEMANDS FOR TURNOVER BY THE TRUSTEE**</u>

Mr. Hindin and Mr. Aver participated in a telephone conference with Nancy Zamora, counsel for the trustee, in or about early August 2021. Subsequently, Mr. Hindin provided a Declaration of Robert M. Hindin, with receipts attached, to Ms. Zamora on August 27, 2021, explaining the Second Personal Injury Matter and the distribution of the settlement proceeds. There were settlement discussions at the time and later between Ms.

**RESNIK HAYES
MORADI LLP**

Zamora and Mr. Hindin's counsel, Mr. Hayes.  Unfortunately to date there has been no settlement.

**6.**    **REQUEST FOR RETROACTIVE APPROVAL OF EMPLOYMENT FOR SECOND PERSONAL INJURY MATTER**

The court should consider the following factors in evaluating whether to approve retroactively the employment of a professional.  See *In re Twinton Properties Partnership*, 27 B.R. 817, 819–20 (Bankr.M.D.Tenn.1983), cited with approval by the Ninth Circuit BAP. See, e.g., *Credit Alliance Corp. v. Boies (In re Crook)*, 79 B.R. 475, 478 (9th Cir. BAP 1987); *In re Crest Mirror & Door Co.*, 57 B.R. 830 (9th Cir BAP 1986); *In re Kroeger Properties & Dev., Inc.*, 57 B.R. 821 (9th Cir. 1986).

1.    The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

The Debtor contracted with Mr. Hindin to represent him in these two matters.

2.    The party for whom the work was performed approves the entry of the nunc pro tunc order;

The Debtor has approved entry of the retroactive order.

3.    The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

This motion has been served on every creditor who now have an opportunity to object.

4.    No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order;

This has yet to be seen but Mr. Hindin assumes that the trustee will object.

5.    The professional satisfied all the criteria for employment pursuant to 11 U.S.C.A. § 327 (West 1979) and Rule 215 [now Rule 2014] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

**RESNIK HAYES
MORADI LLP**

Mr. Hindin's employment was approved as to the first case, the auto accident. No party objected to the employment application and it was approved. That establishes that he satisfied all the criteria for his employment by the estate in the second matter. In short, he has no conflicts with the Debtor or the estate. He was clearly qualified to represent the debtor in a personal injury matter and would have been approved had Debtor's general counsel filed the appropriate application or at least a supplement to the application.

6. The work was performed properly, efficiently, and to a high standard of quality;

Mr. Hindin asserts and the Debtor agrees that the work was performed in an exemplary manner and that Mr. Hindin should be paid for his efforts and the great results that were achieved.

7.    No actual or potential prejudice will inure to the estate or other parties in interest;

There is no prejudice to any party. Of course, if the employment is not approved retroactively, the estate will have some $23,000 extra but that would always be the result of this factor. There is no prejudice to any party for Mr. Hindin getting paid for the work he did.

8.    The applicant's failure to seek pre-employment approval is satisfactorily explained; and

Mr. Hindin relied on the debtor's general counsel Raymond Aver to file the Application to approve his employment as was done with respect to the first personal injury action. It was reasonable to believe that Mr. Aver would do that. It was also reasonable for Mr. Hindin to believe that the original application included the second personal injury matter. Mr. Hindin is not a bankruptcy attorney and his reliance on Mr. Aver was reasonable.

9.    The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

**RESNIK HAYES**
**MORADI LLP**

Mr. Hindin was employed in the first instance.  There is no pattern of inattention. He did his job.

Mr. Hindin asserts that the record in this case establishes that the failure to be employed in advance was inadvertent as to him.  The evidence establishes that he did the job and got the results and that he should not be denied compensation because of the failure of Debtor's counsel to prepare and file the required Application.

## 10.    <u>LISTING OF PROFESSIONAL EDUCATION AND EXPERIENCE</u>

Robert Hindin's resume listing his professional education and experience is attached as **Exhibit "A"** to Robert Hindin's Declaration.

<u>**WHEREFORE, Applicant respectfully requests:**</u>

1.    That the Court approve and allow fees, pursuant to 11 U.S.C. §330, for services rendered of $24,400.00 for legal services related to First Personal Injury Matter, in addition to $4,589.50 for costs that was already paid as expenses by the Firm.

2.    That the Court approve and allow fees, pursuant to 11 U.S.C. §330, for services rendered of $23,333.33 for legal services related to the Second Personal Injury Matter, in addition to $3,650 for costs that was already paid as expenses by the Firm.

3.    Such other and further relief as this Court deems just and proper.

Dated:  December 9, 2021                              **RESNIK HAYES MORADI LLP**

                                                    **By:**        **/s/ M. Jonathan Hayes**
                                                                   **M. Jonathan Hayes**
                                                                   **Matthew D. Resnik**
                                                                   *Attorneys for Creditor*
                                                                   Robert Hindin

## DECLARATION OF MOHAMMAD SADEGH NAMAZIKHAH

I, Mohammad Sadegh Namazikhah, declare as follows:

1.      I am the debtor herein.  I have personal knowledge of the facts of this case as set forth herein.  If called upon as a witness, I could and would competently testify as to these matters.

2.      I am submitting this declaration in support of First and Final Application by Robert Hindin & Associates, APLC, a Personal Injury Law Firm, For Allowance of Fees and Reimbursement of Costs for Litigating Debtor's Personal Injury Claims.

3.      I am 73 years old, have been married for 53 years, and am an established endodontist with 41 years of experience.  I was the Chairman of the Endodontic Department and Director of the Post Graduate Program at the University of Southern California for a number of years.  I am the former President of the Dental Society and Trustee of the California Dental Association.  I have given lectures both in the United States and internationally over the past 20 years.  I am the Founder of Interfaith Festival of Unity Center.  I am also the Founder of Iman Cultural Center, and its current President and CEO.

4.      I first met attorney Robert Hindin approximately 10 years ago.  He has represented me in numerous legal matters.  In addition, he has represented members of my family during this period of time.  I think of Mr. Hindin in the highest regard and believe he is an excellent attorney.  In addition, I think of Mr. Hindin as a personal friend and I have had many lunches and dinners with him over the years.  I believe he has my personal best interest at heart.

**First Personal Injury Matter**

5.      I was involved in a car accident on December 11, 2013 and I immediately contacted Mr. Hindin.  I signed a Retainer Agreement with Mr. Hindin's firm on December 17, 2017.  His firm immediately represented me and assisted with repairs to my car and arranged for medical treatment for me.  In this car accident, I suffered pain to my left shoulder, and I treated with a chiropractor, Dr. Nemat, whom is a chiropractor I knew

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RESNIK HAYES
MORADI LLP**

before the car accident.  I was treated for left shoulder pain, lower back pain and stiffness.
I was then referred to Dr. Hekmat.  Upon seeing Dr. Hekmat, I was given an epidural
steroid injection, which helped with my back and right leg pain.  After some time, my
shoulder was not improving, and it was determined that I needed arthroscopic surgery to
my left shoulder, which I undergone.  Dr. Hekmat performed the surgery in year 2016.  In
addition, I saw Dr. Aminian for a second opinion, a neurologist that I knew, due to
headaches that I was suffering from following the accident.  I obtained an MRI which
indicated that the headaches derived from a neck injury as a result of the car accident.

6.      These are the doctors I treated with as a result of the injuries I suffered from
the car accident I was involved in with Mr. Delbert Holland:

- Primary Health Clinic / Elham Nemat, D.C., Q.M.E
  16101 Ventura Blvd., Ste. 343, Encino, CA 91436, 818-779-1447
  Chiropractic manipulation and physical therapy
- Integrated Healthcare Medical Group / Kamran Broukhim, M.D. /
  Roya Tabibian, D.C. 1762 Westwood Blvd., Ste. 300, Los Angeles,
  CA 90024, 310-441-2000
  Chiropractic manipulation and physical therapy
- Radiology Disc of Encino / Andy Herbold, M.D.
  16661 Ventura Blvd., Ste. 100, Encino, CA 91436, 818-986-3472
  MRI
- Beverly Hills Center for Arthroscopic and Outpatient Surgery /
  Jamshid Hekmat, M.D. / Farshid Hekmat, M.D. / Samuel Seelig,
  M.D. / Sharon Bonnes, M.D. / Shirin Hekmat, 9763 Pico Blvd., Ste.
  250, Los Angeles, CA 90035, 310-772-0098
  Epidural injection, arthroscopy of the left shoulder with arthroscopic
  repair of the rotator cuff, arthroscopic repair of the superior labrum,
  arthroscopic subacromial decompression/acromioplasty, arthroscopic

**RESNIK HAYES**
**MORADI LLP**

Mumford procedure, arthropscopic synovectomy, arthroscopic total bursectomy, bilateral sacroiliac blocks, anesthetics, lab work.

7.      During the time that Mr. Hindin represented me, he constantly contacted me and we spoke about the case; he kept me apprised of what was going on.  He indicated to me that he was unable to settle the case without filing a lawsuit, which he did on my behalf, with my knowledge.  During litigation, I was called into Mr. Hindin's office on a number of occasions to answer discovery questions and to prepare me for a deposition.  In addition to discussing my medical treatment, we discussed at length how the injuries were effecting my life and my work.  I sat through a deposition for approximately five hours regarding this case.  Mr. Hindin represented me at the deposition and personally attended the deposition with me.  Following the deposition, I had lengthy conversations with Mr. Hindin wherein I was told that he was having problems with settling the case for a reasonable amount, and thus we should participate in mediation.  I agreed with Mr. Hindin that the next step would be to attend a mediation with a mediator that both sides agreed upon.  I did attend a mediation with Mr. Hindin on October 25, 2017, which lasted for about 4 hours.  At the mediation, the case was settled for $61,000.00.  I believe that Mr. Hindin did an excellent job in this case and maximized my settlement as much as he could.  Although I believe I should have received more money, I believe that $61,000.00, as explained to me by Mr. Hindin, was a fair settlement.  In addition, I know that Mr. Hindin spent a substantial amount of time negotiating my medical bills and obtaining substantial discounts to the bills.

8.      In or about November 28, 2018, I was at Mr. Hindin's office when we reviewed the settlement accounting for disbursement of the $61,000.00.  I went over each item listed in the settlement accounting, including my agreement to pay Mr. Hindin $5410.50 for fees incurred for him representing me in the Ghorbanian matter and allowing him to take $4000.00 of the settlement money of the personal injury case to apply to the arbitration cost incurred in the Ghorbanian matter.  We went over the settlement

**RESNIK HAYES
MORADI LLP**

accounting item by item and I agreed to the distribution of said monies and payments to doctors. I believe Mr. Hindin did an excellent job in this matter.

9.    In addition, Mr. Raymond Aver, who was representing me in my bankruptcy proceedings, both Chapter 7 and Chapter 11, knew of the existence of the personal injury case against Mr. Holland. I gave consent to Mr. Aver to petition the Chapter 11 bankruptcy court to have Mr. Hindin hired as my attorney in the PI matter. It is also my understanding that Mr. Aver knew that the personal injury case was proceeding and was in fact settled during mediation.

**Second Personal Injury Matter**

10.    On or about August 24, 2017, I was a customer at a coffee shop well-known as The Coffee Bean, located at 10612 National Blvd., Los Angeles, CA 90034. At approximately 3:00 p.m., I purchased 3 cups of coffee to-go. I was handed a cardboard tray with the 3 cups of coffee placed in it, by an employee of The Coffee Bean, and then exited the store. As I walked towards my car that was parked in the parking lot for customers of The Coffee Bean, unbeknownst to me, there was an unmarked curb that was in disrepair, in a cracked and broken condition. I stepped down from the unmarked curb that was in disrepair, slightly lost balance in my left foot due to the curb's condition, which caused my right foot to hit the concrete stopper ahead, and then caused me to trip over the stopper and fall to the ground.

11.    Immediately after the accident, I contacted Mr. Hindin and told him I had another accident. I described what transpired and told him that I had severely hurt my right shoulder. Please note that Mr. Hindin was still representing me in the car accident against Mr. Holland, which at the time had not settled yet. Upon speaking with Mr. Hindin, he went to the accident site accompanied by his son, Kyle Hindin, whom is also an attorney. Mr. Hindin took photographs of the location of the incident.

12.    I called Mr. Hindin regarding this accident without hesitation because I was happy with how he was handling the car accident case. I signed a written Contingency Fee Agreement to retain Mr. Hindin for his accident on September 30, 2017. After working on

**RESNIK HAYES
MORADI LLP**

my case for a short period of time, I was informed by Mr. Hindin that there may be 2 responsible parties for my accident, being International Coffee & Tea Leaf, and a separate entity that owned the parking lot that serviced The Coffee Bean store, which is Tenger Investment Co.  Please note that at this time, Mr. Hindin was also still representing me in the Ghorbanian matter that was pending.

13.    Upon signing the Retainer Agreement with Mr. Hindin, I spent considerable amount of time discussing the merits of the case and the need for immediate medical attention.  Soon after retaining Mr. Hindin, he had conversations with me about his contact with an expert, whom believed that the curb in which I fell was in disrepair and unmarked.  Although this was brought to my attention, Mr. Hindin also indicated to me, through his experience in excess of 40 years, any slip and fall case is always subject to the defense of comparative negligence.

14.    As a result of the slip and fall accident, I suffered from a torn rotator cuff to my right shoulder, which resulted in another surgery performed by Dr. Hekmat.  Dr. Hekmat was the same surgeon that performed surgery to my left shoulder which was injured in the car accident, as described above.  I also suffered from bruises and pain to my right elbow, bruises to my right knee, and inability to raise my right arm.  I lacked sleep for 4 weeks following surgery to my right shoulder, with stiffness in my neck and lower back pain. I had chronic dull pain to my right arm.  I also suffered from anxiety, nervousness, constant intermittent pain that caused me to suffer from headaches which was related to the pain and anxiety over limitation of movement.  All of these injuries affected my ability to earn a living.  Further, I suffered from an allergic reaction to anesthesia following the surgery to my shoulder, which caused a severe rash with itching and redness to my entire body for a period of approximately 1 week.

15.    The treating doctors that attended to me for the injuries I suffered from the slip and fall accident were:

- Fred Farshid Hekmat, MD

9763 Pico Blvd., Ste. 200, Los Angeles, CA 90035, 310-712-0000

RESNIK HAYES
MORADI LLP

Consultation, surgery, follow-up visits

• Radiology Disc of Encino

16661 Ventura Blvd., Ste. 100, Encino, CA 91436, 818-267-9622

MRIs

• Southern California Hospital at Culver City

3828 Delmas Terrace, Culver City, CA 90231

Surgery

• Quantum Health Clinics, DC, Inc.

910 Via De La Paz, Ste. 101, Pacific Palisades, CA 90272, 310-278-8384

Physiotherapy treatment

16. In addition, I decided to have acupuncture treatment instead of traditional physical therapy. I went to a person by the name of Dr. Elham Mahoozi. I have known her for a while and I heard that she is an excellent acupuncturist. I began receiving acupuncture after I felt that traditional physical therapy was not helping me. I treated with Dr. Mahoozi for approximately 2 years. My decision to use the acupuncturist was mine alone, and I told Mr. Hindin that was what I wanted to do. From the start of litigation of the second case, I was always kept informed by Mr. Hindin of the progress of my case, and Mr. Hindin indicated that slip and fall cases are very difficult and the defense would take the position that the accident was my fault. Therefore, Mr. Hindin told me to expect a lawsuit to be filed and the case to be litigated. In regards to both accidents, my objective was to pay my medical bills, not to make money, despite the fact that as a result of the second accident, I was out of work for 2 months. I agreed with Mr. Hindin that if it was necessary to pursue a lawsuit against the responsible parties, to do so.

17. After the lawsuit was filed and served, I spent numerous hours with Mr. Hindin and his associate, Snow Vuong, answering written interrogatories. Mr. Hindin also indicated that an expert needed to be hired to verify that there were code violations existing where I fell at the parking lot of The Coffee Bean.

**RESNIK HAYES
MORADI LLP**

18.      Further, Mr. Hindin attended my deposition, which lasted approximately 5 hours.  After the deposition, I was given a copy of the transcript to review, which I did with Mr. Hindin.  After more discovery was propounded and answered by both parties, it was agreed upon that there would not be a settlement, but the defense counsel agreed to attend mediation.  After a lengthy discussion, I agreed to participate in mediation and Mr. Hindin indicated to me, through his knowledge that he obtained John Raleigh through ARC.  It is my understanding that Mr. Hindin advanced the mediation fee.  Mr. Hindin also explained to me that Mr. Raleigh was the perfect mediator for this type of case because he was a personal injury defense attorney for over 25 years and had his own defense firm before retiring as a practicing attorney to become a full-time mediator.  Mr. Hindin also informed me that he had used Mr. Raleigh on 2 prior occasions within the last year with very good results.  We attended mediation at the ARC offices located in downtown Los Angeles.  I attended the mediation, which began at 10 a.m. and resolved at 3 p.m. the same day.  Throughout the mediation, the mediator had separate conferences with the parties.  When Mr. Raleigh came to my side, we had intense discussions regarding the case.  All through these conversations, I was very impressed with Mr. Hindin's knowledge of my case and the command of the law that pertains to my case.  After some very heated discussions, I agreed to settle the case for $70,000.00.  At the mediation, a settlement agreement was drafted by Mr. Raleigh.  I read it, reviewed it with Mr. Hindin, and executed it.

19.      Then on January 15, 2020, I was at Mr. Hindin's office where I reviewed a 4-page General Release of All Claims with Mr. Hindin.  On or about January 17, 2020, Mr. Hindin spoke with me and informed me that he had a telephone conversation with Mr. Aver.  In this conversation, he told me that he asked Mr. Aver if we were able to disburse the $70,000.00 settlement funds without getting court authority.  Mr. Hindin specifically said to me that Mr. Aver told him not to worry because Mr. Aver would take care of everything with the Court.  I was also told by Mr. Hindin that Mr. Aver requested $5000.00 from the settlement funds as payment towards his legal fees for my bankruptcy,

**RESNIK HAYES
MORADI LLP**

and that Mr. Aver wanted to be reimbursed for payment of deposition costs that he had

incurred in the Ghorbanian matter as a secured creditor. I gave consent to Mr. Hindin to

give Mr. Aver $5000.00 from the settlement for fees he incurred for my bankruptcy and

also $3653.59 to pay the court reporter.

20.    On January 22, 2020, I again visited Mr. Hindin's office and went over the

accounting of this case. I was pleasantly surprised, without my request that Mr. Hindin

agreed to lower his fee from 40% to one-third. I was very appreciative of what Mr. Hindin

did because I know he worked hard on the case and I personally know through

conversations, the amount of time spent, and this was a difficult case to resolve because

the defense was obsessed that I was at fault, or partially at fault, for the accident.

21.    Once again, I was very pleased with Mr. Hindin's representation of me in the

second accident, as well as the first accident.

22.    I am a professional person and academician; I am knowledgeable in my area

of expertise, but when matters concern legal issues and litigation, I am a lay person. For

this reason, I rely on my lawyers and trust them to make the right decisions on my behalf

regarding legal matters.


I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed December 6, 2021, at Los Angeles, California.


By:  _____See Next Page_____

Mohammad Sadegh Namazikhah

*Declarant*

**RESNIK HAYES
MORADI LLP**

and that Mr. Aver wanted to be reimbursed for payment of deposition costs that he had incurred in the Ghorbanian matter as a secured creditor. I gave consent to Mr. Hindin to give Mr. Aver $5000.00 from the settlement for fees he incurred for my bankruptcy and also $3653.59 to pay the court reporter.

20.    On January 22, 2020, I again visited Mr. Hindin's office and went over the accounting of this case. I was pleasantly surprised, without my request, that Mr. Hindin agreed to lower his fee from 40% to one-third. I was very appreciative of what Mr. Hindin did because I know he worked hard on the case and I personally know through conversations, the amount of time spent, and this was a difficult case to resolve because the defense was obsessed that I was at fault, or partially at fault, for the accident.

21.    Once again, I was very pleased with Mr. Hindin's representation of me in the second accident, as well as the first accident.

22.    I am a professional person and academician; I am knowledgeable in my area of expertise, but when matters concern legal issues and litigation, I am a lay person. For this reason, I rely on my lawyers and trust them to make the right decisions on my behalf regarding legal matters.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 6, 2021, at Los Angeles, California.

By: _M. S. Namazikhah_
Mohammad Sadegh Namazikhah
_Declarant_

SNIK HAYES
MORADI LLP

18

# DECLARATION OF ROBERT HINDIN

I, Robert Hindin, declare as follows:

1.    I am a member of the California Bar.  I am admitted to practice in all the Courts of the State of California and am admitted to practice before the District Court of the Central District of California.  I am the lead attorney in the law firm of Robert Hindin & Associates, APLC.  I have personal knowledge of all the facts contained in this declaration and if called as a witness, I could and would competently testify thereto.

2.    I have been practicing law since my admission as an attorney in June 1975 and my license has always been in good standing.   My current law firm, Robert Hindin & Associates, APLC, was formed in 2007.  My legal specialties encompass personal injury litigation, business litigation, family law, and real estate matters.  Attached hereto as **Exhibit "A"** is a true and correct copy of my curriculum vitae.

3.    I have known Dr. Namazikhah for over 20 years and have been his legal counsel during that period of time.

4.    I referred Dr. Namazikhah to Mr. Aver for his Chapter 11 bankruptcy.  I have known Mr. Aver for 10 years and have referred him a number of cases in the past, and I had trust in him and his work ethic.  During the time I represented Dr. Namazikhah in the slip and fall case ("Second Personal Injury Matter"), he was in bankruptcy.  From the beginning when I represented Dr. Namazikhah in the Second Personal Injury Matter, I advised Mr. Aver, as Dr. Namazikhah's bankruptcy counsel, that my firm was retained for such purpose.  I relied on Mr. Aver to do what was necessary with such information, as far as Dr. Namazikhah's bankruptcy was concerned, which is the reason I told him of my representation in the Second Personal Injury Matter.  It was my understanding that Mr. Aver would file the requisite papers to have my firm employed to represent Dr. Namazikhah in the Second Personal Injury Matter.  Mr. Aver had done so in another personal injury case I was retained for ("First Personal Injury Matter") and he was

bankruptcy counsel.  This was my understanding based upon my discussion with Mr. Aver about the Second Personal Injury Matter.

5.    I have a personal relationship with Dr. Namazikhah, and I communicated with him every 2-3 weeks.  During one of these conversations, Dr. Namazikhah called me very upset because there was a problem with the sale of his house.  He then began to ask me some questions about a possible conversion of his bankruptcy to a Chapter 7 bankruptcy, but I immediately stopped him, and stated to him that I do not practice bankruptcy, that he must speak to Mr. Aver about his bankruptcy issues.

6.    I did not look at bankruptcy records nor the court docket nor reviewed the schedules relating to Dr. Namazikhah's bankruptcy.

7.    At the time of the settlement of the Second Personal Injury Matter, I contacted Mr. Aver and informed him of the settlement.  Mr. Aver knew that the Second Personal Injury Matter was pending from previous discussions.  I relied on Mr. Aver for guidance regarding the disbursement of the settlement funds of the Second Personal Injury Matter and whatever rules and regulations I would need to comply with.  I asked Mr. Aver what I should do with the funds on deposit.  Mr. Aver said he would take care of it.  He reassured me that I was allowed to disburse the funds.  Further, Mr. Aver requested that $5,000 be disbursed to him personally from the $70,000 settlement for payment of attorney's fees for Dr. Namazikhah's bankruptcy, for which he was attorney of record.

8.    Based upon my conversation with Mr. Aver, I contacted Dr. Namazikhah and informed him that Mr. Aver requested $5,000 from the settlement funds of the Second Personal Injury Matter to be applied as payment for attorney's fees for his legal bill regarding the bankruptcy.  Dr. Namazikhah consented and gave me authorization to issue a check to Raymond Aver for $5,000.00 from the $70,000 settlement funds that were on deposit in my client trust account, which, was given to Mr. Aver.

11.    When Mr. Aver was informed about the $70,000 settlement, he also requested that my firm pay directly to Atkinson-Baker Court Reporter the sum of $3,653.59 for payment of transcripts of depositions that were taken in Dr. Namazikhah's

**RESNIK HAYES
MORADI LLP**

21

bankruptcy proceeding.  Attached hereto as **Exhibit "1"** are true and correct copies of statements in said amount billed to Mr. Aver, whom retained the court reporter services for the creditor claim of Dr. Ghorbanian.

12.    As previously stated herein, I am not a bankruptcy attorney and I solely relied on and trusted Mr. Aver, especially since I had known him for a number of years and we had a good rapport.  As a result of the two disbursements to Mr. Aver and Atkinson-Baker Court Reporters at the direction of Mr. Aver, with approval by Dr. Namazikhah, which totaled $8,653, Dr. Namazikhah did not receive any monies from the $70,000 settlement.

**First Personal Injury Matter - Auto Incident Case**

13.    I was retained on December 17, 2013 for the First Personal Injury Matter, which concerned an auto versus auto collision that Dr. Namazikhah was involved in, against the other driver, Delbert Holland.  Attached hereto as **Exhibit "2"** is a true and correct copy of the Contingency Fee Agreement.

14.    Negotiations towards settlement of this auto collision case began after Dr. Namazikhah's surgery to his left shoulder and treatment for his other physical ailments as a result of the auto collision.  Substantial amount of time, in excess of 20 hours, dealing with the insurance adjuster and carrier, over a period of two years, to no avail, necessitated my firm to file a lawsuit on December 9, 2015.  Attached hereto as **Exhibit "3"** are true and correct copies of the pleadings and discovery in the court case for the auto collision, which were produced by my firm.

15.    Even after a substantial amount of time with discovery proceedings and my firm's belief that Mr. Holland was absolutely liable for the incident, the defense firm, representing the carrier, still would not settle the matter.  A trial was set, but prior to trial preparation taking place, we were able to agree to participate in a mediation session.  After a full day of mediation, the case was settled for $61,000.00.

16.    Attached hereto as **Exhibit "4"** is a true and correct copy of Release of All Claims executed by Dr. Namazikhah.

**RESNIK HAYES
MORADI LLP**

17.    Attached hereto as **Exhibit "5"** is a true and correct copy of a list of medical providers and costs incurred for Dr. Namazikhah's medical treatment as a result of the auto collision.

18.    Attached hereto as **Exhibit "6"** is a true and correct copy of the Settlement Accounting explaining the disbursement of settlement funds.

19.    The amount of time spent pre-litigation and litigation was substantial, and my firm earned its forty percent (40%) contingency fee as based upon the foregoing facts.

**Second Personal Injury Matter – Slip and Fall Case**

20.    On or about August 24, 2017, Dr. Namazikhah contacted me personally and informed me that he suffered serious injuries while walking out of the International Coffee Bean & Tea Leaf store located at 10612 National Boulevard, Los Angeles, California 90034, while carrying a cardboard tray holding three beverages. I was informed by Dr. Namazikhah that he lost his balance while stepping off a curb that was directly in front of the subject store, fell down, and seriously injured his right shoulder and right side of his body.

21.    On September 30, 2017, Dr. Namazikhah executed a Contingency Fee Agreement (hereinafter "Fee Agreement") with my office, a true and correct copy of which is attached hereto as **Exhibit "7"**, regarding the slip/trip and fall incident that occurred on August 24, 2017.

22.    The Fee Agreement calls for a contingency fee of one-third (1/3) of the gross sum recovered if the matter is settled prior to litigation; and forty percent (40%) of the recovery thereafter.

23.    Upon being retained by Dr. Namazikhah, I personally spent a number of hours with him reviewing the facts leading up to Dr. Namazikhah's fall; obtaining information regarding the responsible party or parties for his injuries; and obtaining information regarding the premises where the incident took place. Upon completion of my investigation, I believed that Dr. Namazikhah had a viable case for premises liability.

**RESNIK HAYES
MORADI LLP**

24.     Pursuant to the information given by Dr. Namazikhah, my firm conducted a thorough investigation and discovered the property owner of the store and the property owner of the parking lot.  It was determined that separate entities owned the parking lot and the coffee store, thus, my firm located 2 entities that may have liability and owed a duty of care to Dr. Namazikhah.

25.     Upon further investigation by retaining an expert, it was determined that there was a crack in the curb and a chip of the curb missing, where Dr. Namazikhah stepped down from the curb.  In addition, the expert advised my firm that there should not have been a concrete wheel stop at the location of Dr. Namazikhah's fall, and further, the parking lot was in violation of building code and safety standards in regards to painting of the parking designations and curbs.

26.     As a result of the injuries he sustained from the slip/trip and fall incident on August 24, 2017, Dr. Namazikhah sought medical treatment with a number of health care providers.  Based upon a medical examination and MRIs that were taken, it was revealed that a surgery was necessary for his right rotator cuff, which was performed by Fred Farshid Hekmat, M.D.  During his surgery, Dr. Namazikhah was treated by an anesthesiologist, Shirin Hekmat.

27.     Following surgery, Dr. Namazikhah had limited physiotherapy treatment at Quantum Health Clinics DC, Inc.  Rather than continue with traditional physical therapy at Quantum Health Clinics, Dr. Namazikhah chose to continue therapy by having acupuncture treatment at Divine Acupuncture Healing with Dr. Elham Mahooz, which lasted for a period in excess of 2 years.

28.      Dr. Namazikhah told me that he chose acupuncture treatment instead of continuing with physiotherapy because he felt that his improvement at Quantum Health Clinics was limited.

29.     During the course of litigation of the Second Personal Injury Matter, including the deposition of Dr. Namazikhah taken by defense counsel, the defense attempted to construct a theory that the incident was caused by Dr. Namazikhah's own

**RESNIK HAYES
MORADI LLP**

24

negligence.  The defense indicated that Dr. Namazikhah was not looking where he was walking, and that Dr. Namazikhah, whom is a bit portly, carried the tray of beverages right in front of his body, which defense claimed had blocked Dr. Namazikhah's view of his feet, and blocked what was directly in front him while he was walking.  Defense counsel was adamant and confident that if the Second Personal Injury Matter went to trial, he would defense the case, which means that Dr. Namazikhah would receive nothing from a jury because of his own negligence.  Although this was the defense's consistent position, my office was persistent that the incident was due to the defendants' negligence for building code and safety violations.  Therefore, after hitting a wall per se, after more than a year of litigation, I was able to convince defense counsel to participate in a private mediation session with John K. Raleigh, Esq. at ARC.

30.     Because of my experience in litigating personal injury cases, I was aware of the reputation of Mr. Raleigh as a mediator.  Mr. Raleigh had a very well-known defense firm for approximately 25 years prior to his retirement and becoming a mediator full time.  Mr. Raleigh has tremendous sway with a number of insurance companies that he represented when he was a practicing attorney.  Therefore, the defense counsel accepted Mr. Raleigh as the mediator and we pursued mediation on January 15, 2020.  The mediation took 6 hours, and although defense continued to claim they would not pay anything and they could defense the case at trial, I was able to obtain a settlement for $70,000.  Mr. Raleigh indicated to me that I did an excellent job and that he was surprised that the insurance company was willing to pay $70,000, but the case settled.  Mr. Raleigh stated to me privately that he thought Dr. Namazikhah was in fact partially responsible for the incident.  Thus, the settlement for $70,000 was notably a success because of the serious defense of contributory negligence.  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit "8"**.  Attached hereto as **Exhibit "9"** is a true and correct copy of the settlement check for $70,000.

31.     The settlement draft of $70,000 was disbursed as follows:

A.      Pursuant to the Fee Agreement, my firm was entitled to forty percent (40%) of the $70,000, which is $28,000.00, as its fee, however, as an accommodation to Dr. Namazikhah, my firm lowered its fee to one-third (1/3) and accepted a payment of $23,333.33, with the intentions that Dr. Namazikhah would benefit by receiving a larger portion from the $70,000.  My firm was also reimbursed for costs in the sum of $3,650, which included Dr. Namazikhah's obligation for his share of one-half the cost of the mediation, which was $2,500 (with defense counsel also paying $2,500), in addition to filing fees, service process fees, motion fees, fees for copies, etc.  Attached hereto as **Exhibit "10"** are true and correct copies of check numbers 5918 and 5919 dated January 27, 2020 made payable to my firm for $23,333.33 and $3,650, respectively.

B.      Attached hereto as **Exhibit "11"** is a true and correct copy of check number 5993 in the amount of $17,500 paid to Beverly Hills Center for Arthroscopic and Outpatient Surgery.  Please note that on December 11, 2013, Dr. Namazikhah had surgery for his left shoulder as a result of a prior injury, performed by the same medical group that operated on his right shoulder as a result of the incident at International Coffee Bean & Teal Leaf.  There were funds remaining on deposit in my client trust account from the previous case, so my firm resolved all liens for both cases and paid Beverly Hills Center for Arthroscopic and Outpatient Surgery the sum of $17,500, and therefore, there was no existing or open bill with the surgeon.  The memo portion of the check (Exhibit "5") also indicates that said check is full and final payment for both cases.

C.      In addition, both surgeries undergone by Dr. Namazikhah required the services of an anesthesiologist, whom was Shirin Hekmat.  Ms. Hekmat accepted and was paid $800 for both cases, thereby satisfying all open bills Dr. Namazikhah had with her.  Attached hereto as **Exhibit "12"** is a true and correct copy of check number 5992 dated February 20, 2020.

D.      During discussions with Dr. Namazikhah, he indicated that when his left shoulder was injured in the past and he sought rehabilitative treatment after surgery, that physical therapy gave him little relief, and therefore he wished to pursue an alternative

**RESNIK HAYES**
**MORADI LLP**

26

1  treatment plan and believed that he would reach greater progress with acupuncture

2  treatment.  I could attest to this opinion because I have had other clients indicate the same

3  to me.  Dr. Elham Mahooz was paid a sum of $17,900 for her acupuncture services

4  rendered to Dr. Namazikhah during a period in excess of 2 years.  Dr. Mahooz's bills were

5  originally $22,925, but she agreed to reduce the bills to a lower sum and accepted $17,900,

6  which were paid to her with 2 checks.  Attached hereto as **Exhibit "13"** are true and

7  correct copies of check number 6008 for $12,000 and check number 6005 for $5,900.  The

8  reason Dr. Mahooz was given 2 checks is because my firm incorrectly believed that we

9  had the final bill when $12,000 was paid, but in fact an additional bill required an

   additional payment.

10      At this time, I would like to address something raised by Nancy Zamora in a

11  conversation between Ms. Zamora, Ray Aver, and myself.  During this 3-person

12  conversation, Ms. Zamora stated that the second check given to Dr. Elham Mahooz, check

13  number 6005 in the sum of $5,900 was payable to "Elham Mahooz" rather than "Dr.

14  Elham Mahooz", and Ms. Zamora found such difference in payee to be very suspicious.  It

15  is unclear to me why this is suspicious.  Upon review of both checks, they were both

16  endorsed with the same signature and both checks cleared my client trust account.  It is

17  clear that my firm did not retain the monies and that the funds were disbursed to Dr.

18  Mahooz.

19      E.      Lastly, of the $70,000 settlement draft, a disbursement in the amount of

20  $5,000 was paid to Ray Aver, and $3,653.59 paid to Atkinson-Baker Court Reporter, both

21  at the direction of Mr. Aver.  Attached hereto as **Exhibit "14"** are true and correct copies

22  of check numbers 5979 and 5920.

23      32.      One last issue that I would like to clarify that Ms. Zamora raised is regarding

24  medical liens.  In personal injury cases, it is common practice that health care providers

25  require the retained attorney and patient/client to execute a medical lien for services, to

26  ensure payment at the time of resolution of the case, rather than relying on payments

27  through Medicare or health insurance.  This allows the patient/client to receive necessary

28

**RESNIK HAYES**
**MORADI LLP**

treatment with the benefit of delaying payment. I could attest that I have been practicing personal injury law for over 45 years and it is standard practice in personal injury cases that the primary payment of medical treatment would be obtained from the settlement proceeds of the case and having an attorney sign a lien promising that they will resolve the medical bill with the particular doctor before any funds are disbursed. Please note that in my firm, and which is also true for other attorneys that practice personal injury, a working relationship is established between the health care provider and the handling attorney in personal injury cases. The reason the health care providers do not use Medicare is because Medicare heavily discounts any service provided and thus the doctor would only receive payment of 10-15% of the bill for services rendered to the patient/client. Thus, it is not economical for the doctor to look to Medicare as a primary source of payment. As to taking health insurance, the client, in many cases, does not have health insurance and therefore most doctors do not think about that unless there is a unique situation. These are the reasons obtaining payment from the settlement of the case makes the most economic sense. Accordingly, Dr. Namazikhah's medical bills incurred as a result of the injuries he suffered were paid from the proceeds of the settlement of the lawsuit.

33.    I believe that my firm and I acted properly at all times and obtained an excellent resolution in the Second Personal Injury Matter. I relied on Mr. Aver for disbursement of the settlement proceeds and believe that I did not commit any wrongdoing, especially since all persons Dr. Namazikhah had an obligation to, were paid and all bills were resolved.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 6, 2021, at Los Angeles, California.



By:    ___See Next Page___
                        Robert Hindin
                        *Declarant*

**RESNIK HAYES
MORADI LLP**

treatment with the benefit of delaying payment. I could attest that I have been practicing personal injury law for over 45 years and it is standard practice in personal injury cases that the primary payment of medical treatment would be obtained from the settlement proceeds of the case and having an attorney sign a lien promising that they will resolve the medical bill with the particular doctor before any funds are disbursed. Please note that in my firm, and which is also true for other attorneys that practice personal injury, a working relationship is established between the health care provider and the handling attorney in personal injury cases. The reason the health care providers do not use Medicare is because Medicare heavily discounts any service provided and thus the doctor would only receive payment of 10-15% of the bill for services rendered to the patient/client. Thus, it is not economical for the doctor to look to Medicare as a primary source of payment. As to taking health insurance, the client, in many cases, does not have health insurance and therefore most doctors do not think about that unless there is a unique situation. These are the reasons obtaining payment from the settlement of the case makes the most economic sense. Accordingly, Dr. Namazikhah's medical bills incurred as a result of the injuries he suffered were paid from the proceeds of the settlement of the lawsuit.

27.    I believe that my firm and I acted properly at all times and obtained an excellent resolution in the Second Personal Injury Matter. I relied on Mr. Aver for disbursement of the settlement proceeds and believe that I did not commit any wrongdoing, especially since all persons Dr. Namazikhah had an obligation to were paid and all bills were resolved.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 6, 2021, at Los Angeles, California.


By: _____
                                Robert Hindin
                                *Declarant*

# EXHIBIT A

## CURRICULUM VITAE OF ROBERT MARC HINDIN

Robert Marc Hindin was first admitted to the California State Bar in December 1975. Presently, he is the principal in a small law firm specializing in the field of business litigation and real estate. In addition, he has actively practiced in the areas of family law and personal injury. Prior to 2008, he as named partner of the firm Hindin & Abel, LLP, wherein he practiced for over twenty-five years.

Mr. Hindin is experienced in tort litigation of all types, both from the plaintiffs and defendants perspective. Mr. Hindin has also participated in well over 100 mediations of tort, personal injury and business cases.

Mr. Hindin's family law practice is limited to high-end divorces involving business and real estate matters as a natural outgrowth of his expertise in those areas. Mr. Hindin is also currently involved in over 300 personal injury cases.

Mr. Hindin has participated in over 150 trials, both jury and bench. He has either been lead counsel or co-counsel on eleven (11) appeals. He has personally argued eight (8) separate appeals before the appellate court. Mr. Hindin has extensive experience in law and motion, discovery, arbitrations and meditations, besides the above-referenced trial work. His appellate work has resulted in the creation of new law. One of these cases was *Marriage of Amato*. Additionally, in the past, his firm has settled at least three multi-million dollar cases in the field of unlawful termination and also numerous personal injury actions in six-figure settlements.

Mr. Hindin graduated from the University of Arizona in 1971 with two separate degrees, a Bachelor of Arts with a major in Philosophy and a Bachelor in Science in Psychology. Mr. Hindin attended Western State University College of Law in 1975, and was a member of the Law Review. He was a recipient of the Cal Jur Criminal Law Award in Law school for criminal law.

Privately, Mr. Hindin was a member of the Board of Directors of Bnai Brith for six years, involving him in numerous charities relating to said organization. Since becoming an attorney, Mr. Hindin has taken extensive continuing education courses and have given several lectures regarding real estate and business litigation.

# EXHIBIT 1

**ROBERT HINDIN AND ASSOCIATES**
A PROFESSIONAL LAW CORPORATION
CLIENT TRUST ACCOUNT
11835 W. OLYMPIC BLVD., FL 3
LOS ANGELES, CA 90064

Wells Fargo Bank, N.A.
California

16-24/1220

1/27/2020

| | | |
|---|---|---|
| PAY TO THE ORDER OF | Atkinson-Baker Court Reporter | $ **3,653.59 |

Three Thousand Six Hundred Fifty-Three and 59/100************************************************************ DOLLARS

Atkinson-Baker Court Reporter
500 North Brand Bl, Third Floor
Glendale, CA 91203-4725

AUTHORIZED SIGNATURE

MEMO  Raymond Aver - Invoice #s AD088B7, AD0614B, AD0898C

⑆ 5920⑆ ⑈ 0247⑈ 9736⑆

---

IOBERT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION •CLIENT TRUST ACCOUNT          5920

Atkinson-Baker Court Reporter                                    1/27/2020
                        Raymond Aver - Invoice #s AD088B7, AD0614B, AD0898C        3,653.59

---

R. Hindin Client Trust    Raymond Aver - Invoice #s AD088B7, AD0614B,                3,653.59

IOBERT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION • CLIENT TRUST ACCOUNT          5920

Atkinson-Baker Court Reporter                                    1/27/2020
                        Raymond Aver - Invoice #s AD088B7, AD0614B, AD0898C        3,653.59

---

R. Hindin Client Trust    Raymond Aver - Invoice #s AD088B7, AD0614B,                3,653.59

Ex 1- 4
0046        6242541201

PRODUCT SSLT104    USE WITH 01663 ENVELOPE    Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

# EXHIBIT 2

# ROBERT HINDIN & ASSOCIATES, APLC

### ATTORNEYS AT LAW

### WESTSIDE TOWERS

### 11845 WEST OLYMPIC BOULEVARD, SUITE 1245

### LOS ANGELES, CALIFORNIA 90064

TELEPHONE (310) 473-0337

FACSIMILE (310) 478-2270

## CONTINGENCY FEE AGREEMENT

**THIS IS AN AGREEMENT** between _Dr. Mohammad S. Namazikhah_

hereinafter referred to as "Client" and ROBERT HINDIN & ASSOCIATES, APLC, hereinafter referred to as "Firm", entered into on the date set forth below.

1.  **MATTER COVERED:** Client retains and employs Firm, and Firm hereby agrees to represent Client in connection with Client's claim for damages, injury or loss arising out of the following occurrence:

    _car collision accident occurred on December 11, 2013._

    Initial _[initials]_

2.  **SERVICES TO BE PERFORMED BY THE FIRM:** Firm agrees to perform the following legal services if necessary in representing Client: investigation of claim, determining responsible parties, preparation and filing of lawsuit, arbitration, or prosecution of lawsuit to judgment in the trial court. Further, in the event a judgment is returned in Client's favor, Firm shall represent client in opposing any motion for new trial.

    No other services, however, are covered by this Agreement. It is specifically understood that in the event a judgment is not returned in Client's favor in the trial court, or that the amount of the judgment is unsatisfactory to Client, Firm shall not be obligated to prosecute a motion for new trial without further fee arrangements between the parties. Likewise, in the event either party appeals from any judgment rendered by the trial court, Firm shall not be obligated to render services in connection with the appeal without additional compensation.

    Initial _M S. N_

3.  **CONTINGENCY FEE:** Client acknowledges that she has been advised by Firm that any contingency fee for this kind of case is negotiable and is not set by law.
    Client agrees to pay Firm a contingency fee as follows:

    An amount equal to thirty-three and one-third per cent (33.33%) of the gross sum received in settlement or compromise of Client's claim before a lawsuit is filed. Thereafter, an amount equal to forty per cent (40%) of the gross sum recovered, whether such recovery is by way of settlement,

Page 1 of 3

**Ex 2- 6**

compromise, judgment, or elected or mandatory mediation or arbitration.

For example if the gross settlement before a lawsuit is filed is $1,000, the Firm contingency fee would be $333.33.  If recovery is after a lawsuit is filed, the fee would be $400.00.

Initial *MEM*

If a fee dispute arises between you and this firm and litigation is commenced to resolve the dispute, the prevailing parties shall be entitled to reasonable Firm fees.

Initial *MSM*

4      **COSTS AND DISBURSEMENTS**: Client is depositing with Firm the sum of -0- to cover the initial investigative costs; however, Firm is not representing that this will be the actual cost, it could be less or more.  Client agrees to pay all costs and disbursements incurred by Firm and reasonably required for the preparation and prosecution of legal action on Client's claim **if there is a recovery**.  This includes, without limitation, fees for filing, service of process, depositions, investigator fees, photo-copying at .25/pg, jury fees, expert witnesses, consultants, witness fees, messenger service, long distance phone calls, postage, fax transmissions @ $1.00/page, and travel expenses.

In the event Client fails to pay any of the costs and disbursements aforesaid, Firm may (but is not obligated to) advance and pay same on Client's behalf.  But any such payments shall be repaid to Firm by Client upon demand, and without regard to the outcome of the legal action on Client's claim.

Initial *MSW*

5.      **RECOVERY AND FIRM'S LIEN**: Client expressly agrees that any recovery check, whether by settlement, compromise, arbitration, or judgment, shall be made out jointly to Client and Firm.
        **Client authorizes the Firm to endorse the settlement or recovery check and deposit that check into Firm's Client Trust Fund Account.**

Initial *MSW*

When the check has been cleared by the bank, disbursement shall take place, including the disbursement of the appropriate Firm fees.  Client hereby grants Firm a lien on Client's claim and any cause of action filed thereon to secure payment to Firm of all sums due under this Agreement for legal services rendered and costs advanced, if any.

Initial *M.SW*

6.      **ROBERT HINDIN & ASSOCIATES, APLC** will carry prime responsibility for all the litigation.  By signing this agreement you expressly authorize ROBERT HINDIN & ASSOCIATES, APLC to associate other counsel or law clerks, the cost of which shall be the sole liability of Firm.

**Ex 2- 7**

Initial _MEN_

7.  **COPY RECEIVED BY CLIENT**:  Client acknowledges receipt of a copy of this agreement concurrently with Client's execution thereof.

Initial _MEN_

8.  **WARRANTIES REGARDING OUTCOME OF CASE**:  It is expressly understood that the Firm is not guaranteeing the success or the likely outcome in this case.

Initial _MEN_

9.  **TERMINATION OF REPRESENTATION**:  Client may discharge Firm with or without cause at any time; but Client agrees to pay Firm the reasonable value of its services at the rate of $400.00 per hour if Client does discharge Firm, or Firm's contingency fee, if settlement, arbitration, or trial results in recovery within a reasonable time of Firm's discharge.

10.  **ERRORS AND OMISSIONS**:  Client is aware that Robert Hindin & Associates, APLC carries no professional liability insurance.

Initial _MEN_

Dated: _Dec. 17, 2013_                    Dated: _12 – 17 – 13_

**ROBERT HINDIN & ASSOCIATES, APLC**

_____        _____
**Robert/Marc Hindin**                     **Client -**

Page 3 of  3

**Ex 2- 8**

# EXHIBIT 3

1    Robert Marc Hindin, Esq., SBN 64793
     Snow Vuong, Esq., SBN 231513
2    **ROBERT HINDIN & ASSOCIATES, APLC**
     11835 W. Olympic Blvd., Suite 1090
3    Los Angeles, CA 90064
     T. 310/473-0337
4    F. 310/478-2270

5    **Attorneys for Plaintiff**
     MOHAMMAD SADEGH NAMAZIKHAH
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF LOS ANGELES**

10             **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

11   MOHAMMAD SADEGH                    )    Case No.:
     NAMAZIKHAH, an individual,          )    [Unlimited Jurisdiction]
12                                        )
             Plaintiff,                   )    Hon.
13                                        )    Dept.:
         vs.                              )
14                                        )    COMPLAINT FOR DAMAGES
     DELBERT HOLLAND, an individual;      )    (NEGLIGENCE)
15   and DOES 1 through 20, inclusive,    )
                                          )
16                                        )
             Defendants.                  )
17                                        )
                                          )
18                                        )
                                          )
19   _____    )

20       Plaintiff Mohammad Sadegh Namazikhah, an individual, alleges:

21       1.      That the accident hereinafter described took place in the County of Los

22   Angeles, State of California.

23       2.      Plaintiff Mohammad Sadegh Namazikhah, an individual, is, and at all relevant

24   times herein, was, an individual of competent age and capacity, and a resident of the County

25   of Los Angeles, State of California.

26       3.      Plaintiff is informed and believes and thereon alleges that Defendant Delbert

27   Holland, an individual, is, and at all relevant times herein, was, a resident of the County of

28   Los Angeles, State of California, and was the driver and registered owner of a vehicle that

---

**1**

**COMPLAINT FOR DAMAGES**

**Ex 3- 10**

1  was involved in a collision that is the subject matter of this lawsuit.

2      4.      Jurisdiction is proper in the Los Angeles County Superior Court of the State of

3  California under California *Code of Civil Procedure* Section 410.10.  The amount in

4  controversy exceeds $25,000.00.

5      5.      Venue is proper in Los Angeles County, California, Central District, under

6  California *Code of Civil Procedure* Section 395(a) and (b), because the acts and omissions

7  out of which this action arises occurred within this County and venue and judicial district.

8      6.      That the true names or capacities, whether individual, corporate, associate or

9  otherwise of Defendants DOES 1 through 20, inclusive, are presently unknown to Plaintiff,

10  who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and

11  believes and thereon alleges that each of the fictitiously named defendants designated herein

12  is responsible in some manner for the events and occurrences alleged herein, and have caused

13  injury and damage to Plaintiff as herein alleged.

14      7.      Plaintiff is informed and believes and thereon alleges that, at all times herein

15  mentioned, each of the named Defendants, including the DOE defendants, were the

16  principals, agents, servants, partners, joint venturers, shareholders, investors, employees,

17  independent contractors, designated representatives, alter egos, and/or other authorized

18  persons or entities of each of the other remaining defendants, and were negligent in the

19  selection, hiring and supervision of the other defendants, and in doing the things herein

20  alleged, was acting within the course and scope of such agency, agreement, or employment in

21  furtherance of such agency and/or employment and with the full knowledge, approval,

22  agreement, permission, consent, ratification, either express or implied, of each of the

23  remaining defendants, and are therefore, liable, vicariously and/or otherwise, jointly and

24  severally, for the damages and injuries that they caused Plaintiff.

25      8.      At all times herein mentioned, Topanga Canyon Boulevard at the intersection

26  of Strathern Street is, and was, a public thoroughfare in the County of Los Angeles, State of

27  California.

28      9.      On or about December 11, 2013, Plaintiff Mohammad Sadegh Namazikhah, an

**2**

**COMPLAINT FOR DAMAGES**

**Ex 3- 11**

1  individual, was operating a vehicle, traveling northbound on Topanga Canyon Boulevard, in

2  the City of Los Angeles, County of Los Angeles, State of California.

3      10.    Plaintiff is informed and believes and thereon alleges that at all times herein

4  mentioned, Defendant Delbert Holland, an individual, and Does 1 through 20, inclusive, and

5  each of them, were operating a vehicle, owned by Delbert Holland and Does 1 through 20,

6  inclusive, also traveling northbound on Topanga Canyon Boulevard, in the County of Los

7  Angeles, State of California.

8      11.    At the time and place aforesaid, Defendants, and each of them, so negligently,

9  carelessly, recklessly, wantonly, and unlawfully drove, operated, maintained, conducted,

10 controlled and entrusted said respective vehicle as to directly and substantially cause the

11 vehicle operated by Defendant Delbert Holland to collide into Plaintiff's vehicle when said

12 Defendant drove at an unsafe speed, thereby colliding into the rear of Plaintiff's vehicle

13 while being operated by Plaintiff Mohammad Sadegh Namazikhah.

14     12.    As a direct and substantial result of the negligence, carelessness, recklessness,

15 wantonness and unlawfulness of Defendants, and each of them, and the incident, as

16 aforesaid, Plaintiff Mohammad Sadegh Namazikhah sustained severe and serious injuries to

17 his person, all to Plaintiff's damage, in an amount that exceeds the minimum jurisdictional

18 requirements of this Court, according to proof at trial.

19     13.    By reason of the foregoing, Plaintiff has been required to employ the services

20 of hospitals, physicians, surgeons, nurses and other professional services and Plaintiff has

21 been compelled to incur expenses for ambulance service, machines, x-rays and other medical

22 supplies and services.  Plaintiff is informed and believes, and thereon alleges, that further

23 services of said nature will be required by Plaintiff in an amount that exceeds the minimum

24 jurisdictional requirements of this Court, according to proof at trial.

25     14.    That as a further direct and substantial result of the aforesaid conduct of

26 Defendants, and each of them, the aforementioned vehicle and other property owned and

27 used by Plaintiff were damaged; and Plaintiff, thereafter, was denied the use of said vehicle

28 and other property, to Plaintiff's further damage; all in amounts that exceed the minimum

**COMPLAINT FOR DAMAGES**

**Ex 3- 12**

1    jurisdictional requirements of this Court, according to proof at trial.

2       15.    By reason of the foregoing, Plaintiff has lost time from his employment as a

3 result of the injuries he sustained that was directly and substantially the result of the incident

4 that is the subject matter of this lawsuit. Plaintiff is informed and believes, and thereon

5 alleges, that he will require additional absence from his employment in the future as a result

6 of the subject collision, all to his detriment and damage, and in an amount that exceeds the

7 minimum jurisdictional requirements of this Court, according to proof at trial.

8       WHEREFORE, Plaintiff Mohammad Sadegh Namazikhah, an individual, prays for

9 judgment against Defendants Delbert Holland, an individual; and Does 1 through 20,

10 inclusive, and each of them, as follows:

11      1.    General damages in a sum according to proof;

12      2.    Sums incurred and to be incurred for services of hospitals, physicians,

13             professional services, medical supplies and services;

14      3.    Sums for loss wages and earnings;

15      4.    Sums for property damage;

16      5.    For interest provided by law including, but not limited to, California *Civil Code*

17             § 3291;

18      6.    Costs of suit incurred herein; and,

19      7.    For such other and further relief as the court deems proper.

20

21 DATED: December 9, 2015            ROBERT HINDIN & ASSOCIATES, APLC

22

23

24                           Robert Marc Hindin
Snow Vuong

25                           Attorneys for Plaintiff,
Mohammd Sadegh Namazikhah

26

27

28

**4**

**COMPLAINT FOR DAMAGES**

1   Ronald Zurek [Bar No. 078701]
    *rzurek@wzllp.com*
2   WESIERSKI & ZUREK LLP
    1000 Wilshire Boulevard, Suite 1750
3   Los Angeles, California 90017
    Telephone: (213) 627-2300
4   Facsimile: (213) 629-2725

5   Attorneys for Defendant, Delbert Holland

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11   MOHAMMAD SADEGH                          CASE NO. BC609141
     NAMAZIKHAH, an individual,
12                                            **DEMAND FOR PHYSICAL
             Plaintiff,                       EXAMINATION**
13                                            [Code Civ. Proc. § 2032.20]
     vs.
14                                            JUDGE HOLLY J. FUJIE
     DELBERT HOLLAND, an individual; and     DEPT. 98
15   DOES 1 through 20, inclusive,
                                              Action Filed:     December 9, 2015
16           Defendants.
                                              FSC Date:         May 24, 2017
17                                            Time:             10:00 a.m.
                                              Dept:             98
18
                                              Trial Date:       June 9, 2017
19                                            Time:             8:30 a.m.
                                              Dept:             98
20

21

22

23   TO PLAINTIFF MOHAMMAD SADEGH NAMAZIKHAH:

24

25        Defendant does hereby demand, pursuant to *Code of Civil Procedure* section

26   2032.20, that you undergo a physical examination, as follows.

27

28        The examination shall take place on April 6, 2017 at 12:00 p.m. at the office of

                                          1
     L0374727-1 MER-4577              DEMAND FOR PHYSICAL EXAMINATION

WESIERSKI & ZUREK LLP
LAWYERS
1000 WILSHIRE BOULEVARD, SUITE 1750
LOS ANGELES, CALIFORNIA 90017
(213) 627-2300

1  Steven Nagelberg, M.D., 10800 Paramount Blvd., Suite 204A, Downey, CA 90241.

2

3       Dr. Nagelberg is an orthopedic surgeon.  He will undertake a complete examination.

4  The examination will be done by Dr. Nagelberg and his usual office personnel.  It will

5  include a complete history relevant to the injury claims in this case, covering time periods

6  before and after the subject accident.  X-ray examination may be requested.  Plaintiff

7  should bring current x-rays if new ones aren't allowed.  There will be no invasive testing

8  without permission of the plaintiff.

9

10      Please note that a written response to this demand is required under *Code of Civil*

11 *Procedure* section 2032.20 in advance of the examination date.

12

13 DATED: March 10, 2017                  WESIERSKI & ZUREK LLP

14

15                                         By:  [signature]

16                                              Ronald Zurek

17                                              Attorneys for Defendant, Delbert Holland

18

19

20

21

22

23

24

25

26

27

28

WESIERSKI & ZUREK LLP
LAWYERS
1000 WILSHIRE BOULEVARD, SUITE 1750
LOS ANGELES, CALIFORNIA 90017
(213) 627-2300

2

L0374727-1 MER-4577

DEMAND FOR PHYSICAL EXAMINATION

DISC-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>ROBERT HINDIN, ESQ.; SBN 64793<br>ROBERT HINDIN & ASSOCIATES, APLC<br>11835 WEST OLYMPIC BOULEVARD SUITE 1090<br>LOS ANGELES, CA 90064<br>TELEPHONE NO.: (310) 473-0337<br>FAX NO. *(Optional)*: (310) 478-2270<br>E-MAIL ADDRESS *(Optional)*: ROBERT@ROBERTHINDINLAW.COM<br>ATTORNEY FOR *(Name)*: MOHAMMAD SADEGH NAMAZIKHAH | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
111 NORTH HILL STREET, LOS ANGELES, CA 90012
CENTRAL DISTRICT- STANLEY MOSK

SHORT TITLE OF CASE:
NAMAZIKHAH V. HOLLAND

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| Asking Party: MOHAMMAD NAMAZIKHAH<br><br>Answering Party: DELBERT HOLLAND<br>Set No.: 1 | BC609141 |

**Sec. 1. Instructions to All Parties**

(a)  Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)  For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c)  These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a)  These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)  Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)  You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)  The interrogatories in section 16.0, Defendant's Contentions–Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)  Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a)  An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)  As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)  Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)  If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)  Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)  Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)  If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)  Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

| | |
|---|---|
| _____ | _____ |
| *(DATE)* | *(SIGNATURE)* |

**Sec. 4. Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☑  (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>DISC-001 [Rev. January 1, 2008] | **FORM INTERROGATORIES—GENERAL** | Code of Civil Procedure,<br>§§ 2030.010–2030.410, 2033.710<br>www.courtinfo.ca.gov |

**Ex 3- 16**

DISC-001

☐ **(2)   INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

**(b)  YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

**(c)  PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

**(d)  DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

**(e)  HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

**(f)  ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5.  Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

### CONTENTS

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information—Individual
3.0 General Background Information—Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation—General
13.0 Investigation—Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred—Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
     Family Law *[See separate form FL-145]*

### 1.0 Identity of Persons Answering These Interrogatories

☑ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. (*Do not identify anyone who simply typed or reproduced the responses.*)

### 2.0 General Background Information—individual

☑ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☑ 2.2 State the date and place of your birth.

☑ 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☑ 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☑ 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

☑ 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☑ 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☑ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☑ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☑ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

**Ex 3- 17**

**DISC-001**

**☑ 2.11** At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
(a) the name, **ADDRESS,** and telephone number of that **PERSON:** and
(b) a description of your duties.

**☑ 2.12** At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT?** If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

**☑ 2.13** Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS,** and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS,** and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information—Business Entity**

**☐ 3.1** Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

**☐ 3.2** Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

**☐ 3.3** Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

**☐ 3.4** Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

**☐ 3.5** Are you an unincorporated association?
If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

**☐ 3.6** Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

**☐ 3.7** Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

**☑ 4.1** At the time of the **INCIDENT,** was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS,** and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS,** and telephone number of the custodian of the policy.

**☑ 4.2** Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

**5.0** *[Reserved]*

**6.0 Physical, Mental, or Emotional Injuries**

**☐ 6.1** Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

**☐ 6.2** Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

**Ex 3- 18**

DISC-001

6.3   Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4   Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS**, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5   Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT**? If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6   Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS**, and telephone number of each provider.

6.7   Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT**? If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER**;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0   Property Damage**

7.1   Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT**?   If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS**, and telephone number of the seller, the date of sale, and the sale price.

7.2   Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS**, and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3   Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS**, and telephone number of the **PERSON** who paid for the repair.

**8.0   Loss of Income or Earning Capacity**

8.1   Do you attribute any loss of income or earning capacity to the **INCIDENT**?  *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2   State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT**; and
(c) the date your employment began.

8.3   State the last date before the **INCIDENT** that you worked for compensation.

8.4   State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5   State the date you returned to work at each place of employment following the **INCIDENT**.

8.6   State the dates you did not work and for which you lost income as a result of the **INCIDENT**.

8.7   State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8   Will you lose income in the future as a result of the **INCIDENT**? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

**Ex 3- 19**

DISC-001

**9.0  Other Damages**

☐ 9.1  Are there any other damages that you attribute to the **INCIDENT?** If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** to whom an obligation was incurred.

☐ 9.2  Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**10.0  Medical History**

☐ 10.1  At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT?** If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☐ 10.2  List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT.** *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

☐ 10.3  At any time after the **INCIDENT,** did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, **ADDRESS,** and telephone number of any other **PERSON** involved;
(c) the nature of any injuries you sustained;
(d) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

**11.0  Other Claims and Previous Claims**

☐ 11.1  Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS,** and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☐ 11.2  In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the **INCIDENT** giving rise to the claim;
(b) the name, **ADDRESS,** and telephone number of your employer at the time of the injury;
(c) the name, **ADDRESS,** and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

**12.0  Investigation—General**

☑ 12.1  State the name, **ADDRESS,** and telephone number of each individual:
(a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT;**
(b) who made any statement at the scene of the **INCIDENT;**
(c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☑ 12.2  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT?** If so, for each individual state:
(a) the name, **ADDRESS,** and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who conducted the interview.

☑ 12.3  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT?** If so, for each statement state:
(a) the name, **ADDRESS,** and telephone number of the individual from whom the statement was obtained;
(b) the name, **ADDRESS,** and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original statement or a copy.

Ex 3- 20

**DISC-001**

**☑ 12.4   Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;

(b) the places, objects, or persons photographed, filmed, or videotaped;

(c) the date the photographs, films, or videotapes were taken;

(d) the name, **ADDRESS,** and telephone number of the individual taking the photographs, films, or videotapes; and

(e) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

**☑ 12.5   Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210– 2034.310) concerning the **INCIDENT?** If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);

(b) the subject matter; and

(c) the name, **ADDRESS,** and telephone number of each **PERSON** who has it.

**☑ 12.6   Was a report made by any PERSON** concerning the **INCIDENT?** If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;

(b) the date and type of report made;

(c) the name, **ADDRESS,** and telephone number of the **PERSON** for whom the report was made; and

(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the report.

**☑ 12.7   Have YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT?** If so, for each inspection state:

(a) the name, **ADDRESS,** and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and

(b) the date of the inspection.

**13.0   Investigation—Surveillance**

**☑ 13.1   Have YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS,** and telephone number of the individual or party;

(b) the time, date, and place of the surveillance;

(c) the name, **ADDRESS,** and telephone number of the individual who conducted the surveillance; and

(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

**☑ 13.2** Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;

(b) the date;

(c) the name, **ADDRESS,** and telephone number of the individual who prepared the report; and

(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy.

**14.0   Statutory or Regulatory Violations**

**☑ 14.1   Do YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT?** If so, identify the name, **ADDRESS,** and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

**☑ 14.2   Was any PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT?** If so, for each **PERSON** state:

(a) the name, **ADDRESS,** and telephone number of the **PERSON;**

(b) the statute, ordinance, or regulation allegedly violated;

(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and

(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0   Denials and Special or Affirmative Defenses**

**☑ 15.1   Identify** each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**16.0   Defendant's Contentions—Personal Injury**

**☑ 16.1   Do you contend** that any **PERSON,** other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON:**

(a) state the name, **ADDRESS,** and telephone number of the **PERSON;**

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**☑ 16.2   Do you contend** that plaintiff was not injured in the **INCIDENT?** If so:

(a) state all facts upon which you base your contention;

(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**Ex 3- 21**

DISC-001

☑ **16.3** Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**? If so, for each injury:

(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☑ **16.4** Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**? If so:

(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☑ **16.5** Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☑ **16.6** Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**? If so:

(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☑ **16.7** Do you contend that any of the property damage claimed by plaintiff in discovery proceedings thus far in this case was not caused by the **INCIDENT**? If so:

(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☑ **16.8** Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☑ **16.9** Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:

(a) the source of each **DOCUMENT;**
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

☑ **16.10** Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:

(a) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER;**
(b) a description of each **DOCUMENT;** and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**17.0 Responses to Request for Admissions**

☐ **17.1** Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0 How the Incident Occurred—Motor Vehicle**

☑ **20.1** State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

☑ **20.2** For each vehicle involved in the **INCIDENT**, state:

(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

**Ex 3- 22**

DISC-001

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS**, and telephone number of each registered owner;

(e) the name, **ADDRESS**, and telephone number of each lessee;

(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

[✔] 20.3 State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

[✔] 20.4 Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

[✔] 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

[✔] 20.6 Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

[✔] 20.7 Was there a traffic signal facing you at the time of the **INCIDENT**? If so, state:
(a) your location when you first saw it;
(b) the color;
(c) the number of seconds it had been that color; and
(d) whether the color changed between the time you first saw it and the **INCIDENT**.

[✔] 20.8 State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:
(a) just before the **INCIDENT**;
(b) at the time of the **INCIDENT**; and (c) just after the **INCIDENT**.

[✔] 20.9 Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and
(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

[✔] 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

[✔] 20.11 State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0 Contract**

[ ] 50.1 For each agreement alleged in the pleadings:
(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;
(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;
(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

[ ] 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

[ ] 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

[ ] 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

[ ] 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

[ ] 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

1   Robert Marc Hindin, Esq., SBN 64793
    Snow Vuong, Esq., SBN 231513
2   **ROBERT HINDIN & ASSOCIATES, APLC**
    11835 W. Olympic Blvd., Suite 1090
3   Los Angeles, CA 90064
    T. 310/473-0337
4   F. 310/478-2270

5   **Attorneys for Plaintiff**
    MOHAMMAD SADEGH NAMAZIKHAH
6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                **IN AND FOR THE COUNTY OF LOS ANGELES**

10               **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

11  MOHAMMAD SADEGH NAMAZIKHAH,          )   Case No.: BC 609 141
    an individual,                       )   [Unlimited Jurisdiction]
12                                       )
                 Plaintiff,              )   Hon. Holly Fujie
13                                       )   Dept.: 98
         vs.                             )
14                                       )   **PLAINTIFF MOHAMMAD SADEGH**
    DELBERT HOLLAND, an individual; and  )   **NAMAZIKHAH'S REQUESTS FOR**
15  DOES 1 through 20, inclusive,        )   **IDENTIFICATION AND PRODUCTION**
                                         )   **OF DOCUMENTS, SET NO. ONE**
16                                       )
                 Defendants.             )
17                                       )
                                         )
18                                       )
                                         )
19                                       )

20  **PROPOUNDING PARTY**    :    Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

21  **RESPONDING PARTY**     :    Defendant DELBERT HOLLAND

22  **SET NO.**              :    ONE

23                          **PRELIMINARY STATEMENT**

24       Pursuant to California *Code of Civil Procedure* § 2031.010, the propounding party identified

25  above requests you identify, produce and permit the inspection, copying or photographing by or on its

26  behalf, the documents and things specified below within thirty days of service of these Requests for

27  Identification and Production of Documents at the law firm of Robert Hindin & Associates, APLC,

28  11835 W. Olympic Boulevard, Suite 1090, Los Angeles, CA 90064.

---

1

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

1 11835 W. Olympic Boulevard, Suite 1090, Los Angeles, CA 90064.

2      The responding party may comply with this demand by identifying and delivering, or causing

3 to be delivered, copies of the requested documents and things to the law firm of Robert Hindin &

4 Associates, APLC, 11835 W. Olympic Boulevard, Suite 1090, Los Angeles, CA 90064 before the

5 date for production set forth above.

6      If the demand is objected to, the reasons for objection shall be stated. If objection is made to

7 part of an item or category, the part shall be so specified.

8      As to each and every item the responding party withholds from production, please identify by

9 description (e.g. memorandum, contract, letter, handwritten note, etc.), date, author, recipient and

10 subject matter, and state the basis for your refusal to produce it.

11      If any of the requested documents or things specified to be produced by this demand are

12 claimed to be privileged, please list the following for each and every item so claimed:

13     a.     A description of the item (e.g. memorandum, contract, letter, handwritten note, etc.);

14     b.     The date the item bears, if any;

15     c.     The general contents of the item;

16     d.     The name, occupation, capacity, home address and telephone number, and business

17         address and telephone number of the individual from whom the allegedly privileged

18         item emanated;

19     e.     The name, occupation, capacity, home address and telephone number, and business

20         address and telephone number of the individual to whom the allegedly privileged item

21         was directed;

22     f.     The name, occupation, capacity, home address and telephone number, and business

23         address and telephone number of each and every person who is currently in possession

24         of the item or a copy thereof; and

25     g.     The privilege claimed thereto.

26      If any of the requested documents or things specified to be produced by this demand existed at

27 one time but no longer exist, please identify each and every such item in the manner indicated above.

28 In addition, as to each and every such item, please identify the last known location of that item and

**2**

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

1    the reason that it is no longer in existence.

2        In producing the requested documents and things specified to be produced by this demand,

3    please indicate to which numbered request each item is responsive.

4        Full compliance with this demand require production of actual photographs or negatives, if

5    requested.  Photographic prints will be made at the propounding party's expense and all photographs

6    or negatives will be returned to the responding party soon thereafter.  Photocopies of any responsive

7    photographs or negatives will be deemed inadequate compliance with this demand.

8        The propounding party alleges that the documents and things specified to be produced by this

9    demand are believed to be currently in the possession, custody or control of the responding party

10   and/or its agents, are relevant tot he subject matter of this action, and are reasonably calculated to lead

11   to the discovery of evidence admissible in this action.  Notice is hereby given that the propounding

12   party may object to the admission into evidence of any item pre-dating the scheduled production date

13   in this demand if the item is not produced as requested.

14       Words printed in **BOLD FACE CAPITALS** in this demand are defined as follows:

15       a.    **WRITINGS** shall mean any written, printed, typed, recorded (including, but not

16   limited to, video, audio, digital, CD), electronic or graphic matter including, but not limited to, files,

17   correspondence, letters, contracts, records, books, papers, telegrams, memoranda, notes, diaries,

18   calendars, photographs, sketches and every other means of recording upon any tangible thing and

19   form of communication or representation including letters, words, pictures, sounds, symbols or

20   combinations of them, and further including originals, drafts, and duplicates thereof as defined in

21   California Evidence Code Sections 250, 255 and 260.

22       b.    **"YOU"** or **"YOUR"** refers to defendant, Delbert Holland and any of said defendant's

23   agents, employees, insurance companies, attorneys, accountants, investigators, and anyone else acting

24   on defendant's behalf, and any of their agents, employees, insurance companies, their agents, their

25   employees, attorneys, accountants, investigators, and anyone else acting on their behalf.

26       c.    **"MOHAMMAD SADEGH NAMAZIKHAH"** or **"PLAINTIFF"** refers to plaintiff

27   Mohammad Sadegh Namazikhah, and any of his agents, employees, insurance companies, their

28   employees, attorneys, accountants, investigators, and anyone else acting on his behalf.

---

**3**

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

**Ex 3- 26**

1    d.    **"INCIDENT"** shall be deemed, without further specification, to include the

2    circumstances and events that form the basis of **PLAINTIFF's** claims alleged in the operative

3    complaint giving rise to this action or proceeding.

4    e.    **"PERSON"** shall mean a natural person, firm, association, organization,

5    partnership, business, trust, corporation, or public entity.

6    f.    **"IDENTIFY"** means to set forth the names of all individuals and/or entities, their

7    addresses, and their telephone numbers.

8    <u>**DOCUMENTS TO BE PRODUCED**</u>

9    1.    A copy of **YOUR** driver's license, and any and all documents, renewals, or

10    restrictions.

11    2.    A copy of **YOUR** insurance policy or policies providing coverage for the

12    **INCIDENT**, in their entirety, not just the face sheets of such policy or policies.

13    3.    A copy of all ownership and registration papers belonging to the vehicle

14    **YOU** were driving, as described in the operative complaint, including "pink slips," DMV registration

15    certifications, and so forth.

16    4.    Copies of all reports or other **WRITINGS** obtained from any insurance

17    indexing system or insurance reporting system which may have information regarding any alleged

18    prior claims for **PLAINTIFF**, if any in fact exists.

19    5.    Copies of all witness statements obtained prior to the filing of this lawsuit,

20    by insurance agents, employees, or adjustors acting on behalf of **YOUR** insurance carrier.

21    6.    Copies of any and all tickets or citations **YOU** received as a result of the

22    **INCIDENT**.

23    7.    Copies of all photographs depicting any damages to the vehicle

24    **PLAINTIFF** was driving at the time of the **INCIDENT**, the vehicle **YOU** were driving at the time of

25    the **INCIDENT**, the location of the **INCIDENT** or cause or causes of the **INCIDENT**.

26    8.    Copies of all **WRITINGS** in support of **YOUR** denial of liability as

27    alleged in **YOUR** answer on file herein.

28    9.    Copies of all **WRITINGS** in support of each of **YOUR** affirmative

---

**4**

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

1  defenses as alleged in **YOUR** answer on file herein.

2      10.    Copies of all **WRITINGS** referred to in **YOUR** responses to Form

3  Interrogatories, Set No. One propounded by **PLAINTIFF**.

4      11.    Copies of all **WRITINGS** supporting **YOUR** contention that **PLAINTIFF**

5  was contributorily negligent in some manner and that such contributory negligence caused, in whole

6  or in part, or contributed in some manner, to the nature and extent of the **INCIDENT**.

7      12.    Copies of all **WRITINGS** disputing, in whole or in part, the extent, scope

8  and nature of **PLAINTIFF'S** present medical condition or extent and scope of the damages alleged as

9  a result of the **INCIDENT**.

10      13.    Copies of any photographs, movies, and/or videotapes made of

11  **PLAINTIFF** at any time since the date of the **INCIDENT**, for any reason whatsoever.

12      14.    Copies of any and all **WRITINGS** disputing, in whole or in part, any of

13  **PLAINTIFF'S** claims for property damage to the vehicle she was driving at the time of the

14  **INCIDENT**.

15      15.    Copies of any and all **WRITINGS** disputing, in whole or in part, any of

16  **PLAINTIFF'S** claims for loss of employment, loss of wages, employment benefits, or employment

17  opportunities.

18      16.    Copies of any and all repair estimates or repair bills for property damage to

19  the vehicle being driven by **YOU** at the time of the **INCIDENT**.

20      17.    Copies of any cellular billing for **YOUR** mobile or cellular phone for the

21  date of **INCIDENT**.

22

23  Dated: September 15, 2016                    ROBERT HINDIN & ASSOCIATES, APLC

24

25                              By: _____

26                                  Robert Marc Hindin
                                    Show Vuong
27                                  Attorneys for Plaintiff
                                    Mohammad Sadegh Namazikhah

28

---

5

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

1

## PROOF OF SERVICE

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3      I am employed in the County of Los Angeles, State of California. I am over the age of eighteen
(18) and not a party to the within action. My business address is 11835 W. Olympic Boulevard, Suite
4  1090, Los Angeles, California 90064.

5      On September 15, 2016 I served the foregoing document described as

6  **1.      INTERROGATORIES, SET NO. ONE; REQUEST FOR PRODUCTION OF
       DOCUMENTS, SET NO. ONE**
7

8  on the interested parties in this action as follows:

9  Jeff Bonelli, Esq.
   Raffalow, Rhoads & Bretoi
10 14724 Ventura Blvd., Ste. 905
   Sherman Oaks, CA 91403

11 **X      BY MAIL AS FOLLOWS:** The envelope was mailed with postage thereon fully prepaid. I
12     am "readily familiar" with the firm's practice of collection and processing correspondence for
       mailing. Under that practice it would be deposited with the U.S. postal service on that same day
13     with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.
       I am aware that on motion of the party served, service is presumed invalid if the postal
14     cancellation date or postage meter date is more than one day after service of deposit for mailing
       in affidavit.

15 ❏    **BY PERSONAL SERVICE:** I caused a true and correct copy of the foregoing document to
16     be hand delivered in a sealed envelope to the offices of the above-referenced interested party.

17 ❏    **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered
       to _____ for delivery to the above address(es).
18

19 ❏    **BY FACSIMILE MACHINE:** The foregoing document was transmitted to the above-named
       persons by facsimile transmission on said date, and the transmission was confirmed as complete
       and without error.
20
       Executed on September 15, 2016 at Los Angeles, California.
21
   **X      (State)**      I declare under penalty of perjury under the laws of the State of California that
22                    the above is true and correct.

23 ❏    (Federal)      I declare that service was made at the direction of a member of the Bar of this
                    Court.
24

25

26

27 _____
       **Kyle Hindin**
28 TYPE OR PRINT NAME                                SIGNATURE

_____

**PROOF OF SERVICE**

1  Robert Marc Hindin, Esq., SBN 64793
   Snow Vuong, Esq., SBN 231513
2  **ROBERT HINDIN & ASSOCIATES, APLC**
   11835 W. Olympic Blvd., Suite 1090
3  Los Angeles, CA 90064
   T. 310/473-0337
4  F. 310/478-2270

5  **Attorneys for Plaintiff**
   MOHAMMAD SADEGH NAMAZIKHAH
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF LOS ANGELES**

10             **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

11 MOHAMMAD SADEGH NAMAZIKHAH,          )  **Case No.: BC 609 141**
   an individual,                       )  [Unlimited Jurisdiction]
12                                       )
                Plaintiff,               )  Hon. Holly Fujie
13                                       )  Dept.: 98
       vs.                              )
14                                       )  **PLAINTIFF MOHAMMAD SADEGH**
   DELBERT HOLLAND, an individual; and   )  **NAMAZIKHAH'S RESPONSES TO**
15 DOES 1 through 20, inclusive,         )  **FORM INTERROGATORIES, SET NO.**
                                         )  **ONE**
16                                       )
                Defendants.              )
17                                       )
                                         )
18                                       )
                                         )
19                                       )

20 _____

21 **PROPOUNDING PARTY**   :    Defendant DELBERT HOLLAND

22 **RESPONDING PARTY**    :    Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

23 **SET NO.**             :    ONE

24        **PURSUANT TO C.C.P. §2030.010,** Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

25 hereby responds to Form Interrogatories, Set No. One, propounded by Defendant DELBERT

26 HOLLAND as follows:

27 **RESPONSE TO FORM INTERROGATORY NO. 2.1:**

28        (a)    Mohammed Sadegh Namazikhah

                                    1
_____

**Ex 3- 30**

| 1 | (b) | Mohammed Sadegh Namazikhah |
| 2 | (c) | Since birth. |

3   **RESPONSE TO FORM INTERROGATORY NO. 2.2:**

4   May 4, 1948; Qum, Iran

5   **RESPONSE TO FORM INTERROGATORY NO. 2.3:**

| 6 | Yes. | |
| 7 | (a) | California |
| 8 | (b) | N8593507; Class C |
| 9 | (c) | 1978 |
| 10 | (d) | Corrective lenses |

11   **RESPONSE TO FORM INTERROGATORY NO. 2.4:**

12   No.

13   **RESPONSE TO FORM INTERROGATORY NO. 2.5:**

| 14 | (a) | 661 Lachman Lane, Pacific Palisades, CA 90272 |
| 15 | (b) | 661 Lachman Lane, Pacific Palisades, CA 90272 |
| 16 | (c) | Since 2001 |

17   **RESPONSE TO FORM INTERROGATORY NO. 2.6:**

| 18 | (a) | Self-employed; M. Sadegh Namazikhah D.M.D., Inc. |
| 19 | | 16661 Ventura Blvd., Ste. 606, Encino, CA 91436 |
| 20 | (b) | Responding Party is an endodontist. |
| 21 | | 16101 Ventura Blvd., Ste. 345, Encino, CA 91436 |

22   **RESPONSE TO FORM INTERROGATORY NO. 2.7:**

| 23 | (a) | Sheshom Bahman High School, in Iran, cannot recall address |
| 24 | | National University of Iran, School of Dentistry, in Tehran, Iran, cannot recall address |
| 25 | | University of Southern California, School of Dentistry - Los Angeles, CA |
| 26 | | University of Southern California, School of Education - Los Angeles, CA |
| 27 | | University of Southern California, School of Medicine - Los Angeles, CA |
| 28 | (b) | Sheshom Bahman High School |

**2**

**PLAINTIFF'S RESPONSES TO FORM INTERROGATORIES, SET NO. ONE**

1        National University of Iran: 1968-1974

2        USC School of Dentistry: 1978-1980

3        USC School of Education: 1980-1981

4        USC School of Medicine: 1981-1982

5    (c)    Post doctoral level

6    (d)    High School diploma, Doctor of Dental Medicine, Degree Certificate in Endodontic,

7        Masters Degree in Medical Education, Post Doctoral training in Medical Education

8        Master of Education

9        Endodontics Certificate

10 **RESPONSE TO FORM INTERROGATORY NO. 2.8:**

11    No.

12 **RESPONSE TO FORM INTERROGATORY NO. 2.9:**

13    Yes.

14 **RESPONSE TO FORM INTERROGATORY NO. 2.10:**

15    Yes.

16 **RESPONSE TO FORM INTERROGATORY NO. 2.11:**

17    No.

18 **RESPONSE TO FORM INTERROGATORY NO. 2.12:**

19    As to Responding Party, no.

20 **RESPONSE TO FORM INTERROGATORY NO. 2.13:**

21    As to Responding Party, no.

22 **RESPONSE TO FORM INTERROGATORY NO. 4.1:**

23    Yes.

24    (a)    Auto Insurance

25    (b)    Mercury Insurance - P.O. Box 929, Santa Clarita, CA 91380

26    (c)    Mohammad Sadegh Namazikhah

27    (d)    0401-06-1401-07455

28    (e)    Bodily injury $250,000/$500,000

1          Property damage $100,000

2          Uninsured motorist $100,000/$300,000

3    (f)    No.

4    (g)    Mohammad Sadegh Namazikhah - 661 Lachman Lane, Pacific Palisades, CA 90272

5  **RESPONSE TO FORM INTERROGATORY NO. 4.2:**

6     No.

7  **RESPONSE TO FORM INTERROGATORY NO. 6.1:**

8     Yes.

9  **RESPONSE TO FORM INTERROGATORY NO. 6.2:**

10     Neck pain, cervical spine sprain/strain, cervicobrachial syndrome, cervical spine myofascitis,

11  cervical spine muscle spasm, brachial neuritis, neuralgia, left leg sprain/strain, left shoulder

12  sprain/strain, rotator cuff injury on left shoulder, lower back pain, lumbar spine sprain/strain, lumbar

13  spine muscle spasm, lumber disc disease, cervicogenic headache; post traumatic left shoulder bursitis,

14  tendonitis; myofascitis of the entire spine and right hip; metabolic syndrome with central obesity;

15  complete tear of the rotator cuff, tear of the superior labrum, severe impingement syndrome,

16  secondary degeneration of the acromioclavicular joint, synovitis of the glenohumeral joint,

17  subacromial bursitis, severe injury of the lower back and both sacroiliac joints.

18  **RESPONSE TO FORM INTERROGATORY NO. 6.3:**

19     Yes.

20    (a)    Chronic pain to shoulder, limitation of use of shoulder and left hand, tightness in neck,

21           limitation of movement of neck, headaches, backaches that shoot to legs

22    (b)    Shoulder - worse after surgery but was told by doctor that it will improve; everything

23           else mentioned has been subsiding but still very painful

24    (c)    Constant and exaggerated with movement.

25  **RESPONSE TO FORM INTERROGATORY NO. 6.4:**

26  Yes.

27  Primary Health Clinic / Elham Nemat, D.C., Q.M.E

28  16101 Ventura Blvd., Ste. 343, Encino, CA 91436, 818-779-1447

**PLAINTIFF'S RESPONSES TO FORM INTERROGATORIES, SET NO. ONE**

1  Chiropractic manipulation and physical therapy

2  $6,174.00

3  Integrated Healthcare Medical Group / Kamran Broukhim, M.D. / Roya Tabibian, D.C.

4  1762 Westwood Blvd., Ste. 300, Los Angeles, CA 90024, 310-441-2000

5  Chiropractic manipulation and physical therapy

6  $3,723.00

7

8  Radiology Disc of Encino / Andy Herbold, M.D.

9  16661 Ventura Blvd., Ste. 100, Encino, CA 91436, 818-986-3472

10  MRI

11  $10,500.00

12

13  Beverly Hills Center for Arthroscopic and Outpatient Surgery / Jamshid Hekmat, M.D. / Farshid

14  Hekmat, M.D. / Samuel Seelig, M.D. / Sharon Bonnes, M.D. / Shirin Hekmat

15  9763 Pico Blvd., Ste. 250, Los Angeles, CA 90035, 310-772-0098

16  Epidural injection, arthroscopy of the left shoulder with arthroscopic repair of the rotator cuff,

17  arthroscopic repair of the superior labrum, arthroscopic subacromial decompression/acromioplasty,

18  arthroscopic Mumford procedure, arthropscopic synovectomy, arthroscopic total bursectomy, bilateral

19  sacroiliac blocks, anaesthetic, lab work.

20  $77,427.25

21  **RESPONSE TO FORM INTERROGATORY NO. 6.5**

22  Although Responding Party was prescribed Norco, he refuses to take it to avoid any possibility of

23  addiction, and instead, suffers from the pain.

24  **RESPONSE TO FORM INTERROGATORY NO. 6.6:**

25  No.

26  **RESPONSE TO FORM INTERROGATORY NO. 6.7:**

27  Yes.

28  (a)      Beverly Hills Center for Arthroscopic and Outpatient Surgery / Jamshid Hekmat, M.D.

PLAINTIFF'S RESPONSES TO FORM INTERROGATORIES, SET NO. ONE

**Ex 3- 34**

1    9763 Pico Blvd., Ste. 250, Los Angeles, CA 90035, 310-772-0098

2    (b)    Back and shoulder pain

3    (c)    Epidural injections; physical therapy

4    Future medical costs unknown at this time.

5    **RESPONSE TO FORM INTERROGATORY NO. 7.1:**

6    Yes, however, the property damage claim was internally resolved as a result of Responding Party and

7    Propounding Party both having Mercury Auto Insurance.

8    **RESPONSE TO FORM INTERROGATORY NO. 7.2:**

9    Yes, however, the property damage claim was internally resolved as a result of Responding Party and

10    Propounding Party both having Mercury Auto Insurance.

11    **RESPONSE TO FORM INTERROGATORY NO. 7.3:**

12    Yes, however, the property damage claim was internally resolved as a result of Responding Party and

13    Propounding Party both having Mercury Auto Insurance.

14    **RESPONSE TO FORM INTERROGATORY NO. 8.1:**

15    Responding Party is not making a claim for loss of income nor earning capacity at this time.

16    **RESPONSE TO FORM INTERROGATORY NO. 9.1:**

17    No.

18    **RESPONSE TO FORM INTERROGATORY NO. 10.1:**

19    No.

20    **RESPONSE TO FORM INTERROGATORY NO. 10.2:**

21    None.

22    **RESPONSE TO FORM INTERROGATORY NO. 10.3:**

23    No.

24    **RESPONSE TO FORM INTERROGATORY NO. 11.1:**

25    No.

26    **RESPONSE TO FORM INTERROGATORY NO. 11.2:**

27    No.

28    ///

**6**

1    **RESPONSE TO FORM INTERROGATORY NO. 12.1:**

2    Only parties to this action; no other witnesses.

3    **RESPONSE TO FORM INTERROGATORY NO. 12.2:**

4    No.

5    **RESPONSE TO FORM INTERROGATORY NO. 12.3:**

6    No.

7    **RESPONSE TO FORM INTERROGATORY NO. 12.4:**

8    (a)    4 photos

9    (b)    Vehicles involved and Defendant Holland

10    (c)    December 11, 2013

11    (d)    Mohammad Sadegh Namazikhah

12    (e)    Mohammad Sadegh Namazikhah

13    **RESPONSE TO FORM INTERROGATORY NO. 12.5:**

14    No.

15    **RESPONSE TO FORM INTERROGATORY NO. 12.6:**

16    No.

17    **RESPONSE TO FORM INTERROGATORY NO. 12.7:**

18    No.

19    **RESPONSE TO FORM INTERROGATORY NO. 13.2:**

20    N/A

21    **RESPONSE TO FORM INTERROGATORY NO. 14.1:**

22    Yes. Defendant Delbert Holland violated Vehicle Code Section 22350 - driving at an unsafe speed.

23    **RESPONSE TO FORM INTERROGATORY NO. 14.2:**

24    Unknown to Responding Party.

25    **RESPONSE TO FORM INTERROGATORY NO. 20.1:**

26    On or about December 11, 2013 at approximately 1:15 p.m. on Topanga Canyon Blvd. near the

27    intersection of Topanga Canyon and Strathern St., Los Angeles, CA.

28    / / /

7

**PLAINTIFF'S RESPONSES TO FORM INTERROGATORIES, SET NO. ONE**

**Ex 3- 36**

1 **RESPONSE TO FORM INTERROGATORY NO. 20.2:**

2 The only information Responding possesses in regards to Defendant's vehicle is that it is a BMW,

3 was driven by Delbert Holland at the time of the subject incident, and there were no passengers in the

4 vehicle.  As to Plaintiff's vehicle:

5 (a)    2011 Buick Lacrosse, plate 6VFF802

6 (b)    Mohammad Sadegh Namazikhah

7 (c)    None

8 (d)    Nader Saborouh - can be contacted through Robert Hindin & Associates

9 (e)    Mohammad Sadegh Namazikhah

10 (f)    None

11 (g)    Nader Saborouh

12 **RESPONSE TO FORM INTERROGATORY NO. 20.3:**

13 The trip began at 16661 Ventura Blvd., Encino, CA and the destination was 22601 Lassen St.,

14 Chatsworth, CA 91311.

15 **RESPONSE TO FORM INTERROGATORY NO. 20.4:**

16 Responding Party traveled west on Ventura Blvd., turned right onto Balboa Blvd., merged onto the

17 101 north, exited onto Topanga Canyon Blvd. north, towards Strathern St.

18 **RESPONSE TO FORM INTERROGATORY NO. 20.5:**

19 The parties were on Topanga Canyon Blvd. in the number one lane.

20 **RESPONSE TO FORM INTERROGATORY NO. 20.6:**

21 No, the incident occurred prior to the vehicles entering into the intersection.

22 **RESPONSE TO FORM INTERROGATORY NO. 20.7:**

23 Yes.

24 (a)    While traveling on Topanga Canyon Rd. and approaching Strathern St.

25 (b)    Red.

26 (c)    Approximately 6 seconds.

27 (d)    No.

28 / / /

---

**8**

1    **RESPONSE TO FORM INTERROGATORY NO. 20.8:**

2    (a)    Plaintiff's vehicle was at a complete stop, facing a red light, on Topanga Canyon Rd.,

3            positioned north, near the intersection of Topanga Canyon and Strathern St. when Defendant's

4            vehicle collided into the rear of Plaintiff's vehicle.

5    (b)    Plaintiff's vehicle was at a complete stop, facing a red light, on Topanga Canyon Rd.,

6            positioned north, near the intersection of Topanga Canyon and Strathern St. when Defendant's

7            vehicle collided into the rear of Plaintiff's vehicle.

8    (c)    Plaintiff's vehicle was at a complete stop, facing a red light, on Topanga Canyon Rd.,

9            positioned north, near the intersection of Topanga Canyon and Strathern St. when Defendant's

10           vehicle collided into the rear of Plaintiff's vehicle.

11   **RESPONSE TO FORM INTERROGATORY NO. 20.9:**

12   No.

13   **RESPONSE TO FORM INTERROGATORY NO. 20.10:**

14   No.

15   **RESPONSE TO FORM INTERROGATORY NO. 20.11:**

16   Plaintiff's vehicle - Mohammad Sadegh Namazikhah and Nader Saborouh

17   Defendant's vehicle - Unknown to Plaintiff.

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSES TO FORM INTERROGATORIES, SET NO. ONE**

**Ex 3- 38**

1  Robert Marc Hindin, Esq., SBN 64793
   Snow Vuong, Esq., SBN 231513
2  **ROBERT HINDIN & ASSOCIATES, APLC**
   11835 W. Olympic Blvd., Suite 1090
3  Los Angeles, CA 90064
   T. 310/473-0337
4  F. 310/478-2270

5  **Attorneys for Plaintiff**
   MOHAMMAD SADEGH NAMAZIKHAH
6

7

8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **IN AND FOR THE COUNTY OF LOS ANGELES**

10              **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

11  MOHAMMAD SADEGH NAMAZIKHAH,          ) Case No.: BC 609 141
    an individual,                       ) [Unlimited Jurisdiction]
12                                        )
                                         )
13               Plaintiff,              ) Hon. Holly Fujie
                                         ) Dept.: 98
14        vs.                            )
                                         ) **PLAINTIFF MOHAMMAD SADEGH**
15  DELBERT HOLLAND, an individual; and  ) **NAMAZIKHAH'S REQUESTS FOR**
    DOES 1 through 20, inclusive,        ) **IDENTIFICATION AND PRODUCTION**
16                                        ) **OF DOCUMENTS, SET NO. ONE**
                                         )
17               Defendants.            )
                                         )
18                                        )
                                         )
19  _____ )

20  **PROPOUNDING PARTY** :    Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

21  **RESPONDING PARTY** :    Defendant DELBERT HOLLAND

22  **SET NO.** :    ONE

23                      <u>**PRELIMINARY STATEMENT**</u>

24        Pursuant to California *Code of Civil Procedure* § 2031.010, the propounding party identified

25  above requests you identify, produce and permit the inspection, copying or photographing by or on its

26  behalf, the documents and things specified below within thirty days of service of these Requests for

27  Identification and Production of Documents at the law firm of Robert Hindin & Associates, APLC,

28  11835 W. Olympic Boulevard, Suite 1090, Los Angeles, CA 90064.

---

1

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

**Ex 3- 39**

1    The responding party may comply with this demand by identifying and delivering, or causing

2   to be delivered, copies of the requested documents and things to the law firm of Robert Hindin &

3   Associates, APLC, 11835 W. Olympic Boulevard, Suite 1090, Los Angeles, CA 90064 before the

4   date for production set forth above.

5    If the demand is objected to, the reasons for objection shall be stated.  If objection is made to

6   part of an item or category, the part shall be so specified.

7    As to each and every item the responding party withholds from production, please identify by

8   description (e.g. memorandum, contract, letter, handwritten note, etc.), date, author, recipient and

9   subject matter, and state the basis for your refusal to produce it.

10    If any of the requested documents or things specified to be produced by this demand are

11   claimed to be privileged, please list the following for each and every item so claimed:

12    a.    A description of the item (e.g. memorandum, contract, letter, handwritten note, etc.);

13    b.    The date the item bears, if any;

14    c.    The general contents of the item;

15    d.    The name, occupation, capacity, home address and telephone number, and business

16        address and telephone number of the individual from whom the allegedly privileged

17        item emanated;

18    e.    The name, occupation, capacity, home address and telephone number, and business

19        address and telephone number of the individual to whom the allegedly privileged item

20        was directed;

21    f.    The name, occupation, capacity, home address and telephone number, and business

22        address and telephone number of each and every person who is currently in possession

23        of the item or a copy thereof; and

24    g.    The privilege claimed thereto.

25    If any of the requested documents or things specified to be produced by this demand existed at

26   one time but no longer exist, please identify each and every such item in the manner indicated above.

27   In addition, as to each and every such item, please identify the last known location of that item and

28   the reason that it is no longer in existence.

---

**2**

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

**Ex 3- 40**

1    In producing the requested documents and things specified to be produced by this demand,

2    please indicate to which numbered request each item is responsive.

3    Full compliance with this demand require production of actual photographs or negatives, if

4    requested.  Photographic prints will be made at the propounding party's expense and all photographs

5    or negatives will be returned to the responding party soon thereafter.  Photocopies of any responsive

6    photographs or negatives will be deemed inadequate compliance with this demand.

7    The propounding party alleges that the documents and things specified to be produced by this

8    demand are believed to be currently in the possession, custody or control of the responding party

9    and/or its agents, are relevant tot he subject matter of this action, and are reasonably calculated to lead

10    to the discovery of evidence admissible in this action.  Notice is hereby given that the propounding

11    party may object to the admission into evidence of any item pre-dating the scheduled production date

12    in this demand if the item is not produced as requested.

13    Words printed in **BOLD FACE CAPITALS** in this demand are defined as follows:

14    a.    **WRITINGS** shall mean any written, printed, typed, recorded (including, but not

15    limited to, video, audio, digital, CD), electronic or graphic matter including, but not limited to, files,

16    correspondence, letters, contracts, records, books, papers, telegrams, memoranda, notes, diaries,

17    calendars, photographs, sketches and every other means of recording upon any tangible thing and

18    form of communication or representation including letters, words, pictures, sounds, symbols or

19    combinations of them, and further including originals, drafts, and duplicates thereof as defined in

20    California Evidence Code Sections 250, 255 and 260.

21    b.    **"YOU"** or **"YOUR"** refers to defendant, Delbert Holland and any of said defendant's

22    agents, employees, insurance companies, attorneys, accountants, investigators, and anyone else acting

23    on defendant's behalf, and any of their agents, employees, insurance companies, their agents, their

24    employees, attorneys, accountants, investigators, and anyone else acting on their behalf.

25    c.    **"MOHAMMAD SADEGH NAMAZIKHAH"** or **"PLAINTIFF"** refers to plaintiff

26    Mohammad Sadegh Namazikhah, and any of his agents, employees, insurance companies, their

27    employees, attorneys, accountants, investigators, and anyone else acting on his behalf.

28    d.    **"INCIDENT"** shall be deemed, without further specification, to include the

---

**3**

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

1  circumstances and events that form the basis of **PLAINTIFF's** claims alleged in the operative

2  complaint giving rise to this action or proceeding.

3      e.    **"PERSON"** shall mean a natural person, firm, association, organization,

4  partnership, business, trust, corporation, or public entity.

5      f.    **"IDENTIFY"** means to set forth the names of all individuals and/or entities, their

6  addresses, and their telephone numbers.

7                    <u>**DOCUMENTS TO BE PRODUCED**</u>

8      1.    A copy of **YOUR** driver's license, and any and all documents, renewals, or

9  restrictions.

10     2.    A copy of **YOUR** insurance policy or policies providing coverage for the

11  **INCIDENT**, in their entirety, not just the face sheets of such policy or policies.

12     3.    A copy of all ownership and registration papers belonging to the vehicle

13  **YOU** were driving, as described in the operative complaint, including "pink slips," DMV registration

14  certifications, and so forth.

15     4.    Copies of all reports or other **WRITINGS** obtained from any insurance

16  indexing system or insurance reporting system which may have information regarding any alleged

17  prior claims for **PLAINTIFF**, if any in fact exists.

18     5.    Copies of all witness statements obtained prior to the filing of this lawsuit,

19  by insurance agents, employees, or adjustors acting on behalf of **YOUR** insurance carrier.

20     6.    Copies of any and all tickets or citations **YOU** received as a result of the

21  **INCIDENT**.

22     7.    Copies of all photographs depicting any damages to the vehicle

23  **PLAINTIFF** was driving at the time of the **INCIDENT**, the vehicle **YOU** were driving at the time of

24  the **INCIDENT**, the location of the **INCIDENT** or cause or causes of the **INCIDENT**.

25     8.    Copies of all **WRITINGS** in support of **YOUR** denial of liability as

26  alleged in **YOUR** answer on file herein.

27     9.    Copies of all **WRITINGS** in support of each of **YOUR** affirmative

28  defenses as alleged in **YOUR** answer on file herein.

---

4

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

**Ex 3- 42**

1        10.     Copies of all **WRITINGS** referred to in **YOUR** responses to Form

2  Interrogatories, Set No. One propounded by **PLAINTIFF**.

3        11.     Copies of all **WRITINGS** supporting **YOUR** contention that **PLAINTIFF**

4  was contributorily negligent in some manner and that such contributory negligence caused, in whole

5  or in part, or contributed in some manner, to the nature and extent of the **INCIDENT**.

6        12.     Copies of all **WRITINGS** disputing, in whole or in part, the extent, scope

7  and nature of **PLAINTIFF'S** present medical condition or extent and scope of the damages alleged as

8  a result of the **INCIDENT**.

9        13.     Copies of any photographs, movies, and/or videotapes made of

10  **PLAINTIFF** at any time since the date of the **INCIDENT**, for any reason whatsoever.

11        14.     Copies of any and all **WRITINGS** disputing, in whole or in part, any of

12  **PLAINTIFF'S** claims for property damage to the vehicle she was driving at the time of the

13  **INCIDENT**.

14        15.     Copies of any and all **WRITINGS** disputing, in whole or in part, any of

15  **PLAINTIFF'S** claims for loss of employment, loss of wages, employment benefits, or employment

16  opportunities.

17        16.     Copies of any and all repair estimates or repair bills for property damage to

18  the vehicle being driven by **YOU** at the time of the **INCIDENT**.

19        17.     Copies of any cellular billing for **YOUR** mobile or cellular phone for the

20  date of **INCIDENT**.

21

22  Dated: September 15, 2016          ROBERT HINDIN & ASSOCIATES, APLC

23

24                   By: _____

25                         Robert Marc Hindin
                            Snow Vuong

26                         Attorneys for Plaintiff
                         Mohammad Sadegh Namazikhah

27

28

**PLAINTIFF'S REQUESTS FOR IDENTIFICATION AND PRODUCTION OF DOCUMENTS, SET NO. ONE**

**Ex 3- 43**

Robert Marc Hindin, Esq., SBN 64793
Snow Vuong, Esq., SBN 231513
**ROBERT HINDIN & ASSOCIATES, APLC**
11835 W. Olympic Blvd., Suite 1090
Los Angeles, CA 90064
T. 310/473-0337
F. 310/478-2270

**Attorneys for Plaintiff**
MOHAMMAD SADEGH NAMAZIKHAH

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

## CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE

| | |
|---|---|
| MOHAMMAD SADEGH NAMAZIKHAH, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> DELBERT HOLLAND, an individual; and DOES 1 through 20, inclusive, <br><br> Defendants. | **Case No.: BC 609 141** <br> [Unlimited Jurisdiction] <br><br> Hon. Holly Fujie <br> Dept.: 98 <br><br> **PLAINTIFF MOHAMMAD SADEGH NAMAZIKHAH'S RESPONSES TO DEMAND FOR INSPECTION AND PRODUCTION OF DOCUMENTS, SET NO. ONE** |

**PROPOUNDING PARTY**     :     Defendant DELBERT HOLLAND

**RESPONDING PARTY**     :     Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

**SET NO.**          :     ONE

**PURSUANT TO C.C.P. §2031.010,** Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

hereby responds to Demand for Inspection and Production of Documents, Set No. One, propounded

by Defendant DELBERT HOLLAND as follows:

**RESPONSE TO DEMAND NO. 1:**

Plaintiff will comply with this Request in whole.  All requested documents in Responding

1

1 | Party's possession, custody or control will be produced as Exhibit 1.

2 | **RESPONSE TO DEMAND NO. 2:**

3 |       A diligent search and a reasonable inquiry has been made in an effort to comply with this

4 | Request. The Responding Party is unable to comply because the documents requested have never

5 | existed.

6 | **RESPONSE TO DEMAND NO. 3:**

7 |       Plaintiff will comply with this Request in whole. All requested documents in Responding

8 | Party's possession, custody or control will be produced as Exhibit 2.

9 | **RESPONSE TO DEMAND NO. 4:**

10 |       Plaintiff will comply with this Request in whole. All requested documents in Responding

11 | Party's possession, custody or control will be produced as Exhibit 2.

12 | **RESPONSE TO DEMAND NO. 5:**

13 |       A diligent search and a reasonable inquiry has been made in an effort to comply with this

14 | Request. The Responding Party is unable to comply because the documents requested have been lost.

15 | **RESPONSE TO DEMAND NO. 6:**

16 |       Plaintiff is not making a claim for loss of use at this time.

17 | **RESPONSE TO DEMAND NO. 7:**

18 |       Plaintiff is not making a claim for loss of earnings at this time.

19 | **RESPONSE TO DEMAND NO. 8:**

20 |       A diligent search and a reasonable inquiry has been made in an effort to comply with this

21 | Request. The Responding Party is unable to comply because the documents requested have never

22 | existed.

23 | **RESPONSE TO DEMAND NO. 9:**

24 |       Plaintiff will comply with this Request in whole. All requested documents in Responding

25 | Party's possession, custody or control will be produced as Exhibit 3.

26

27

28

**PLAINTIFF'S RESPONSES TO DEMAND FOR DOCUMENTS, SET NO. ONE**

**Ex 3- 45**

1 │ Robert Marc Hindin, Esq., SBN 64793
  │ Snow Vuong, Esq., SBN 231513
2 │ **ROBERT HINDIN & ASSOCIATES, APLC**
  │ 11835 W. Olympic Blvd., Suite 1090
3 │ Los Angeles, CA 90064
  │ T. 310/473-0337
4 │ F. 310/478-2270

5 │ **Attorneys for Plaintiff**
  │ MOHAMMAD SADEGH NAMAZIKHAH
6 │

7 │

8 │                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 │                      **IN AND FOR THE COUNTY OF LOS ANGELES**

10 │                   **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

| 11 | MOHAMMAD SADEGH | ) | **Case No.: BC 609 141** |
|----|----------------|---|---------------------------|
| 12 | NAMAZIKHAH, an individual, | ) | [Unlimited Jurisdiction] |
| 13 | Plaintiff, | ) | Hon. Holly Fujie |
|    |            | ) | Dept.: 98 |
| 14 | vs. | ) | **PLAINTIFF MOHAMMAD SADEGH** |
| 15 | DELBERT HOLLAND, an individual; and | ) | **NAMAZIKHAH'S RESPONSES TO** |
|    | DOES 1 through 20, inclusive, | ) | **SPECIAL INTERROGATORIES, SET** |
| 16 | | ) | **NO. ONE** |
| 17 | Defendants. | ) | |
| 18 | | ) | |
| 19 | | ) | |

20 │ _____

21 │ **PROPOUNDING PARTY  :**      Defendant DELBERT HOLLAND

22 │ **RESPONDING PARTY    :**      Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

23 │ **SET NO.                      :**      ONE

24 │        **PURSUANT TO C.C.P. §2031.010,** Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

25 │ hereby responds to Special Interrogatories, Set No. One, propounded by Defendant DELBERT

26 │ HOLLAND as follows:

27 │ **RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

28 │ Dr. Arshia Noori - Cedars-Sinai Medical Center 8700 Beverly Blvd., Los Angeles, CA

                                              1
─────────────────────────────────────────────────────────────
          **PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES, SET NO. ONE**

**Ex 3- 46**

1   Dr. Hooman Madyoon - 99 N. La Cienega Blvd., Ste. 203, Beverly Hills, CA

2   Dr. Allan Kurtz - 6325 Topanga Canyon Blvd., Ste. Woodland Hills, CA

3   **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

4   Primary Health Clinic / Elham Nemat, D.C., Q.M.E

5   $6,174.00

6   Integrated Healthcare Medical Group / Kamran Broukhim, M.D. / Roya Tabibian, D.C.

7   $3,723.00

8   Radiology Disc of Encino / Andy Herbold, M.D.

9   $10,500.00

10   Beverly Hills Center for Arthroscopic and Outpatient Surgery / Jamshid Hekmat, M.D. / Farshid

11   Hekmat, M.D. / Samuel Seelig, M.D. / Sharon Bonnes, M.D. / Shirin Hekmat

12   $77,427.25

13   **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

14   No, they are on liens.

15   **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

16   Blue Shield of California

17   P.O. Box 272540, Chico, CA 95927

18   **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

19   Aetna

20   151 Farmington Ave.

21   Hartford, CT 06156

22   **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

23   N/A

24   **RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

25   N/A

26   **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

27   No.

28   / / /

**2**

**PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES, SET NO. ONE**

**Ex 3- 47**

1  **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

2  N/A

3  **RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

4  N/A

5  **RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

6  No.

7  **RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

8  N/A

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

10  N/A

11  **RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

12  N/A

13  **RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

14  556552894A

15  **RESPONSE TO SPECIAL INTERROGATORY NO. 16:**

16  None.

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

18  No.

19  **RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

20  N/A

21  **RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

22  N/A

23  **RESPONSE TO SPECIAL INTERROGATORY NO. 20:**

24  Primary Health Clinic / Elham Nemat, D.C., Q.M.E

25  16101 Ventura Blvd., Ste. 343, Encino, CA 91436, 818-779-1447

26

27  Integrated Healthcare Medical Group / Kamran Broukhim, M.D. / Roya Tabibian, D.C.

28  1762 Westwood Blvd., Ste. 300, Los Angeles, CA 90024, 310-441-2000

---

**3**

**PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES, SET NO. ONE**

**Ex 3- 48**

1  Radiology Disc of Encino / Andy Herbold, M.D.

2  16661 Ventura Blvd., Ste. 100, Encino, CA 91436, 818-986-3472

3

4  Beverly Hills Center for Arthroscopic and Outpatient Surgery / Jamshid Hekmat, M.D. / Farshid

5  Hekmat, M.D. / Samuel Seelig, M.D. / Sharon Bonnes, M.D. / Shirin Hekmat

6  9763 Pico Blvd., Ste. 250, Los Angeles, CA 90035, 310-772-0098

7  **RESPONSE TO SPECIAL INTERROGATORY NO. 21:**

8  To date:

9  Primary Health Clinic / Elham Nemat, D.C., Q.M.E

10  $6,174.00

11  Integrated Healthcare Medical Group / Kamran Broukhim, M.D. / Roya Tabibian, D.C.

12  $3,723.00

13  Radiology Disc of Encino / Andy Herbold, M.D.

14  $10,500.00

15  Beverly Hills Center for Arthroscopic and Outpatient Surgery / Jamshid Hekmat, M.D. / Farshid

16  Hekmat, M.D. / Samuel Seelig, M.D. / Sharon Bonnes, M.D. / Shirin Hekmat

17  $77,427.25

18  **RESPONSE TO SPECIAL INTERROGATORY NO. 22:**

19  N/A

20  **RESPONSE TO SPECIAL INTERROGATORY NO. 23:**

21  Warner Victory Pharmacy

22  6325 Topanga Canyon Blvd., Woodland Hills, CA 91367

23  CVS

24  864 N. Swarthmore Ave., Pacific Palisades, CA 90272

25  **RESPONSE TO SPECIAL INTERROGATORY NO. 24:**

26  Saideh Namazikhah - 661 Lachman Lane, Pacific Palisades, CA 90272

27  Mojgan Faghihi - 16661 Ventura Blvd., Ste. 100, Encino, CA 91436, 818-986-3472

28  / / /

**4**

**PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES, SET NO. ONE**

1    **RESPONSE TO SPECIAL INTERROGATORY NO. 25:**

2    Saideh Namazikhah - 661 Lachman Lane, Pacific Palisades, CA 90272

3    Mojgan Faghihi - 16661 Ventura Blvd., Ste. 100, Encino, CA 91436, 818-986-3472

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES, SET NO. ONE

**Ex 3- 50**

1   Robert Marc Hindin, Esq., SBN 64793
    Snow Vuong, Esq., SBN 231513
2   Kyle Jordan Hindin, Esq., SBN 312472
    **ROBERT HINDIN & ASSOCIATES, APLC**
3   11835 W. Olympic Blvd., Suite 1090
    Los Angeles, CA 90064
4   T. 310/473-0337 | F. 310/478-2270

5   **Attorneys for Plaintiff**
    MOHAMMAD SADEGH NAMAZIKHAH
6

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **IN AND FOR THE COUNTY OF LOS ANGELES**

10                    **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

11  MOHAMMAD SADEGH NAMAZIKHAH,          )   **Case No.: BC 609 141**
    an individual,                       )   [Unlimited Jurisdiction]
12                                       )
              Plaintiff,                 )   Hon. Holly Fujie
13                                       )   Dept.: 98
          vs.                            )
14                                       )   **PLAINTIFF MOHAMMAD SADEGH
    DELBERT HOLLAND, an individual; and  )   NAMAZIKHAH'S RESPONSE TO
15  DOES 1 through 20, inclusive,        )   SUPPLEMENTAL INTERROGATORY,
                                         )   SET NO. ONE**
16                                       )
              Defendants.                )
17                                       )
                                         )
18                                       )
                                         )
19  _____     )

20  **PROPOUNDING PARTY    :**    Defendant DELBERT HOLLAND

21  **RESPONDING PARTY    :**    Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

22  **SET NO.    :**    ONE

23          **PURSUANT TO C.C.P. §2030.070,** Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

24  hereby responds to Supplemental Interrogatory, Set No. One, propounded by Defendant DELBERT

25  HOLLAND as follows:

26                            **PRELIMINARY STATEMENT**

27          These responses are made solely for the purpose of this action.  Each response is subject to all

28  appropriate objections which would require the exclusion of any evidence contained herein if the

                                            1
                **PLAINTIFF'S RESPONSE TO SUPPLEMENTAL INTERROGATORY, SET NO. ONE**

1  material were offered at the time of trial.  All objections and grounds are reserved and may be

2  interposed at the time of trial.

3       The responding party has not yet completed investigation of the facts relating to this action,

4  discovery in this action, or preparation for trial of this action.  Consequently, these responses are

5  given without prejudice to the right of the responding party to produce at the time of trial any and all

6  subsequently discovered evidence relating to the proof of presently known material facts, and to

7  produce all evidence, whenever discovered, relating to the proof of subsequently discovered material

8  facts.

9       Lastly, the objection is made to each and every interrogatory that the information sought

10  invades the attorney-client and attorney-work product privileges.  Without waiving this objection, the

11  responding party hereby responds as follows:

12  **RESPONSE TO SUPPLEMENTAL INTERROGATORY NO. 1:**

13       All answers remain the same.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2**

**PLAINTIFF'S RESPONSE TO SUPPLEMENTAL INTERROGATORY, SET NO. ONE**

1  Robert Marc Hindin, Esq., SBN 64793
   Snow Vuong, Esq., SBN 231513
2  Kyle Jordan Hindin, Esq., SBN 312472
   **ROBERT HINDIN & ASSOCIATES, APLC**
3  11835 W. Olympic Blvd., Suite 1090
   Los Angeles, CA 90064
4  T. 310/473-0337 | F. 310/478-2270

5  **Attorneys for Plaintiff**
   MOHAMMAD SADEGH NAMAZIKHAH
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **IN AND FOR THE COUNTY OF LOS ANGELES**

10            **CENTRAL DISTRICT - STANLEY MOSK COURTHOUSE**

11  MOHAMMAD SADEGH NAMAZIKHAH,          )  **Case No.: BC 609 141**
    an individual,                       )  [Unlimited Jurisdiction]
12                                       )
                 Plaintiff,              )  Hon. Holly Fujie
13                                       )  Dept.: 98
           vs.                           )
14                                       )  **PLAINTIFF MOHAMMAD SADEGH**
    DELBERT HOLLAND, an individual; and  )  **NAMAZIKHAH'S RESPONSE TO**
15  DOES 1 through 20, inclusive,        )  **SUPPLEMENTAL DEMAND FOR**
                                         )  **PRODUCTION, INSPECTION, AND**
16                                       )  **COPYING OF DOCUMENTS AND**
               Defendants.              )  **TANGIBLE THINGS, SET NO. ONE**
17                                       )
                                         )
18                                       )
                                         )
19  _____ )

20  **PROPOUNDING PARTY**  :    Defendant DELBERT HOLLAND

21  **RESPONDING PARTY**   :    Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

22  **SET NO.**            :    ONE

23       **PURSUANT TO C.C.P. §2031.050,** Plaintiff MOHAMMAD SADEGH NAMAZIKHAH

24  hereby responds to Supplemental Demand for Production, Inspection, and Copying of Documents and

25  Tangible Things, Set No. One, propounded by Defendant DELBERT HOLLAND as follows:

26                        **PRELIMINARY STATEMENT**

27       These responses are made solely for the purpose of this action. Each response is subject to all

28  appropriate objections which would require the exclusion of any evidence contained herein if the

                                      1
   **PLAINTIFF'S RESPONSE TO SUPPLEMENTAL DEMAND FOR PRODUCTION, SET NO. ONE**

1  material were offered at the time of trial.  All objections and grounds are reserved and may be

2  interposed at the time of trial.

3      The responding party has not yet completed investigation of the facts relating to this action,

4  discovery in this action, or preparation for trial of this action.  Consequently, these responses are

5  given without prejudice to the right of the responding party to produce at the time of trial any and all

6  subsequently discovered evidence relating to the proof of presently known material facts, and to

7  produce all evidence, whenever discovered, relating to the proof of subsequently discovered material

8  facts.

9      Lastly, the objection is made to each and every interrogatory that the information sought

10  invades the attorney-client and attorney-work product privileges.  Without waiving this objection, the

11  responding party hereby responds as follows:

12  **RESPONSE TO SUPPLEMENTAL DEMAND NO. 1:**

13      All answers remain the same.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S RESPONSE TO SUPPLEMENTAL DEMAND FOR PRODUCTION, SET NO. ONE**

**Ex 3- 54**

# EXHIBIT 4

Claim Number: 2013 0016
008157-11

## RELEASE OF ALL CLAIMS

Mohammad Sadegh Namazikhah, for the sole consideration of $61,000 (Sixty One Thousand Dollars) paid to Mohammad Sadegh Namazikhah, his attorneys and any lienholders, receipt and sufficiency of which is hereby acknowledged, and for his/her/their heirs, executors, administrators, successors, and assigns;

1.  Does hereby release, acquit, and forever discharge Delbert Holland and his agents, principals, servants, successors, heirs, executors, administrators, insurer, and insurer's agents of and from any and all claims, actions, causes of action, demands, rights, damages (including punitive damages), attorney's fees, costs, loss of service, expenses, and compensation, which the undersigned has now, or which he/she/they may have in the future because of any and all known and unknown, foreseen and unforeseen personal injuries resulting from the accident, the handling of any insurance claim, or the defense of any legal proceeding because of the accident, which occurred on December 11, 2013 at or near the intersection of Topanga Canyon Blvd. and Strathern Street, County of Los Angeles.

2.  Understands and agrees that this settlement is the compromise of a disputed claim, and that this payment is not to be construed as an admission of liability on the part of Delbert Holland who expressly denies liability.

3.  Understands that he/she/they will be responsible for satisfying all lienholders, and agree to indemnify and hold harmless the insured and their insurer, against any claim, suit or demand made by any lienholder.

4.  Waives all rights he/she/they may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state or territory of the United States, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

5.  Declares that the terms of this settlement have been voluntarily accepted to make a full and final settlement of all claims, disputed or otherwise, for the express purpose of preventing forever any further or additional claims against Delbert Holland or his insurer arising out of the referenced accident.

6.  Understands that no agreements have been made between the parties except as expressed here and the terms of this release are contractual and not a mere recital. In signing this release, releasee relied solely upon his/her/their own judgment without any reliance upon any statement of the party or parties being released or their representatives.

7.  Agrees that any disagreement about this release shall be decided in California under California law.

I HAVE READ THIS RELEASE AND FULLY UNDERSTAND IT.

**CAUTION: READ BEFORE SIGNING**

X _____ Date: _10 - 25 - 2017_
    Mohammad Sadegh Namazikhah

X _____ Date: _____

For your protection, California law required the following to appear on this form:

ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.

C42 01/2014

I 0413067-1 MFR-4577

**Ex 4- 56**

# EXHIBIT 5

| Primary Health Clinic (PHC) | 12/13/13 | Signed lien | $6,174.00 |
|---|---|---|---|
| Integrated Healthcare Medical Group / Kamran Broukhim / Roya Tabibian | 2/3/14 | Signed lien | $3,723.00 |
| Radiology Disc of Encino | 05/22/14 06/05/14 09/11/15 09/14/15 | No signed lien; No report for 9/11/14 and 9/14/15 | $10,500.00 |
| Beverly Hills Center for Arthroscopic & Outpatient Surgery Jamshid Hekmat (surgeon) / Shirin Hekmat (Anesthesiologist) | 4/13/16 (Samuel Seelig, MD) ... 4/15/16 (Jamshid Hekmat, MD) ... 5/10/16 (Jamshid J. Hekmat, MD) ... Various dates ... | Signed lien | $12,222.05 $30,397.15 $10,222.05 $18,751.00 $5500.00 (Anesth.) $335.00 (Lab) |
| TOTAL | | | $97,824.25 |

***Namazikhah v. Holland***
**Date of Loss: 12/11/13**

# EXHIBIT 6

## ROBERT HINDIN & ASSOCIATES, APLC

ATTORNEYS AT LAW

**11355 WEST OLYMPIC BOULEVARD, THIRD FLOOR**

**LOS ANGELES, CALIFORNIA 90064**

TELEPHONE (310) 473-0337

FACSIMILE (310) 478-2270

### SETTLEMENT ACCOUNTING

CLIENT:    Mr. Mohammad Sadegh Namazikhah
DATE:      November 28, 2018

GROSS TOTAL SETTLEMENT:   $61,000.00

ATTORNEY FEES:  Pursuant to written retainer agreement at 40% of settlement due to being involved in lengthy litigation: $24,400.00

COSTS: $4,589.50
Filing Fee - $435.00
Service of Process - $100.00
Obtaining/Requesting Medical Records and Reports - $350.00
Deposition Costs - $447.00
Mediation Fee - $1,632.50
Photocopying and Facsimile - $375.00
Parking at depositions and Court hearings - $75.00
Attorney Service Fees - $175.00
Consultation with expert regarding low impact force - $1,000.00

MEDICAL SPECIALS

| TOTAL MEDICAL BILLS (w/lien) | Lien Amount | Negotiated Amount |
|---|---|---|
| | $97,824.25 | $23,000.00 |

**BALANCE TO CLIENT:**   $5,410.50 ($9,410.50 less $4,000.00 litigation costs advanced on case entitled Ghorbanian vs. Namazikhah, et. al., which is presently in ADR binding arbitration.)

I, Mohammad Sadegh Namazikhah, received from Robert Hindin & Associates, APLC the sum of $5,410.50. In accordance with the above accounting, I hereby approve of the distribution. I understand that any medical bills without a lien with my attorney, any unpaid medical bills or any insurance reimbursement, will be my sole responsibility.

**READ, UNDERSTOOD AND AGREED.**

Dated:_____        CLIENT:_____
                                                                        Mohammad Sadegh Namazikhah

# EXHIBIT 7

# ROBERT HINDIN & ASSOCIATES, APLC

### ATTORNEYS AT LAW

### THE WESTSIDE TOWERS - EAST TOWER

### 11835 WEST OLYMPIC BOULEVARD, SUITE 1090

### LOS ANGELES, CALIFORNIA 90064

TELEPHONE (310) 473-0337

FACSIMILE (310) 478-2270

## CONTINGENCY FEE AGREEMENT

**THIS IS AN AGREEMENT** between _DR. MOHAMMAD SADEGH NAWAZadeh_ hereinafter referred to as "Client" and ROBERT HINDIN & ASSOCIATES, APLC, hereinafter referred to as "Firm", entered into on the date set forth below.

1. **MATTER COVERED:** Client retains and employs Firm, and Firm hereby agrees to represent Client in connection with Client's claim for damages, injury or loss arising out of the following occurrence: _SLIP / TRIP AND FALL AUGUST 24TH OF 2017_

   Initial _M-S_

2. **SERVICES TO BE PERFORMED BY THE FIRM:** Firm agrees to perform the following legal services if necessary in representing Client: investigation of claim, determining responsible parties, preparation and filing of lawsuit, arbitration, or prosecution of lawsuit to judgment in the trial court. Further, in the event a judgment is returned in Client's favor, Firm shall represent client in opposing any motion for new trial.

   No other services, however, are covered by this Agreement. It is specifically understood that in the event a judgment is not returned in Client's favor in the trial court, or that the amount of the judgment is unsatisfactory to Client, Firm shall not be obligated to prosecute a motion for new trial without further fee arrangements between the parties. Likewise, in the event either party appeals from any judgment rendered by the trial court, Firm shall not be obligated to render services in connection with the appeal without additional compensation.

   Initial _M-S.R_

3. **CONTINGENCY FEE:** Client acknowledges that she has been advised by Firm that any contingency fee for this kind of case is negotiable and is not set by law.
   Client agrees to pay Firm a contingency fee as follows:

   An amount equal to thirty-three and one-third per cent (33.33%) of the gross sum received in settlement or compromise of Client's claim before a lawsuit is filed. Thereafter, an amount equal to forty per cent (40%) of the gross sum recovered, whether such recovery is by way of settlement, compromise, judgment, or elected or mandatory mediation or arbitration.

Page 1 of 3

**Ex 7- 62**

This firm shall earn a fee only if a settlement, mediation, arbitration, or trial produces any sum for the client.

For example if the gross settlement before a lawsuit is filed is $1,000.00, the Firm contingency fee would be $333.33. If recovery is after a lawsuit is filed, the fee would be $400.00.

HOWEVER, IF CLIENT DOES NOT HAVE A LEGAL ENTITLEMENT TO GENERAL DAMAGES (I.E. IF CLIENT WAS NOT INSURED AT THE TIME OF THE ACCIDENT), THE FEE SHALL BE INCREASED TO 50% OF ALL AMOUNTS COLLECTED ON BEHALF OF CLIENT, WHETHER OR NOT SUIT IS FILED ON BEHALF OF THE CLIENT.

Initial _M.S.L_

If a fee dispute arises between you and this firm and litigation is commenced to resolve the dispute, the prevailing parties shall be entitled to reasonable Firm fees.

Initial _M.S._

4    **COSTS AND DISBURSEMENTS**: Client is depositing with Firm the sum of -0- to cover the initial investigative costs; however, Firm is not representing that this will be the actual cost, it could be less or more. Client will be charged a file set up cost in the amount of $250.00. This cost will only be assessed in the amount that settlement funds are recovered on behalf of Plaintiff by this office. Client agrees to pay all costs and disbursements incurred by Firm and reasonably required for the preparation and prosecution of legal action on Client's claim **if there is a recovery**. This includes, without limitation, fees for filing, service of process, depositions, investigator fees, photo-copying at .25/pg, jury fees, expert witnesses, consultants, witness fees, messenger service, long distance phone calls, postage, fax transmissions at $1.00/page, and travel expenses.

In the event Client fails to pay any of the costs and disbursements aforesaid, Firm may (but is not obligated to) advance and pay same on Client's behalf. But any such payments shall be repaid to Firm by Client upon demand, and without regard to the outcome of the legal action on Client's claim.

Initial _M.S.N_

5.    **RECOVERY AND FIRM'S LIEN**: Client expressly agrees that any recovery check, whether by settlement, compromise, arbitration, or judgment, shall be made out jointly to Client and Firm.
       **Client authorizes the Firm to endorse the settlement or recovery check and deposit that check into Firm's Client Trust Fund Account.**

Initial _M.S.N_

When the check has been cleared by the bank, disbursement shall take place, including the disbursement of the appropriate Firm fees. Client hereby grants Firm a lien on Client's claim and any cause of action filed thereon to secure payment to Firm of all sums due under this Agreement for legal services rendered and costs advanced, if any.

Initial _M.S.N_

Page 2 of 3

**Ex 7- 63**

6.  **ROBERT HINDIN & ASSOCIATES, APLC** will carry prime responsibility for all the litigation. By signing this agreement you expressly authorize ROBERT HINDIN & ASSOCIATES, APLC to associate other counsel or law clerks, the cost of which shall be the sole liability of Firm.

Initial *M.S. N*

7.  **COPY RECEIVED BY CLIENT**:  Client acknowledges receipt of a copy of this agreement concurrently with Client's execution thereof.

Initial *M.S. N*

8.  **WARRANTIES REGARDING OUTCOME OF CASE**:  It is expressly understood that the Firm is not guaranteeing the success or the likely outcome in this case.

Initial *M.S. N*

9.  **TERMINATION OF REPRESENTATION**:  Client may discharge Firm with or without cause at any time; but Client agrees to pay Firm the reasonable value of its services at the rate of $400.00 per hour if Client does discharge Firm, or Firm's contingency fee, if settlement, arbitration, or trial results in recovery within a reasonable time of Firm's discharge.

10.  **ERRORS AND OMISSIONS**:  Client is aware that Robert Hindin & Associates, APLC carries no professional liability insurance.

Initial *M.S. N*

Dated:  Sept 30, 2014                    Dated:  9 - 30 - 17

**ROBERT HINDIN & ASSOCIATES, APLC**

_____            _____

**Robert Marc Hindin**                          **Client -**

Page 3 of 3

**Ex 7- 64**

# EXHIBIT 8

## GENERAL RELEASE OF ALL CLAIMS

**FOR AND IN CONSIDERATION** of the total sum of SEVENTY THOUSAND AND NO/100 DOLLARS ($70,000.00) receipt of which is hereby acknowledged and accepted in full compromise settlement and satisfaction of, and as sole consideration for the final release and discharge of, all actions, claims and demands whatsoever, that now exist, or may hereafter accrue against and is limited to INTERNATIONAL COFFEE & TEA, LLC DBA THE COFFEE BEAN & TEA LEAF and TENGER INVESTMENT CO, LTD, their partners, members, shareholders thereof and any other person, corporation, association, partnership or any insurance carrier(s), including but, not limited to Travelers Casualty Insurance Company of America, TRAVELERS INDEMNITY COMPANY and all of its subsidiaries and parent companies, thereof, charged with responsibility for injuries or insurance indemnification (hereinafter "Released Parties") to the person and property of MOHAMMAD SADEGH NAMAZIKHAH, an individual, ("Releasor) and the consequences following therefrom, as the result of an incident, casualty or event which occurred on or about August 24, 2017, located at 10612 National Blvd, Los Angeles, CA, which is the subject of LOS ANGELES County Superior Court Action number BC687349, Namazikah, Mohammad v. International Coffee & Tea, LLC.

1. Releasor warrants, that no promise or inducement has been offered except as herein set forth that this Release is executed without reliance upon any statement or representation by the person or parties released, or their representatives, or physicians, concerning the nature and extent of the injuries and/or damages and/or legal liability therefor; that Releasor is of legal age, legally competent to execute this Release and accepts full responsibility therefor, and:

2. Releasor agrees, as a further consideration and inducement for this compromise settlement, that it is a full and final release of all claims against the Released Parties and shall apply to all known and unknown and anticipated and unanticipated injuries and damages resulting from said accident, casualty or event, as well as to those now known or disclosed.

3. Releasor further agrees to indemnify and hold harmless Released Parties with respect to any and all claims, liens, encumbrances, known or unknown, expected or unexpected, in existence or arising from accident, casualty or event described hereinabove, or from any providers of medical or related services, insurers, attorneys, governmental entities, or others who may claim lien, subrogation, indemnification, or other rights with respect to or related to the accident, casualty or event, or from this compromise and release, by whoever asserted.

4. Releasor further agrees that all rights under Section 1542 of the Civil Code of California and any similar law of any state or territory of the United States or other jurisdiction are hereby expressly waived. Said section reads as follows:

> "1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her

I

**For your protection, California law requires the following appear on this form:** Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Ex 8- 66**

favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

5.  Releasor and Releasor's counsel of record, for the consideration set forth in this Release Agreement, further agree to satisfy any and all liens or claims against the proceeds of this Agreement, specifically including, but not limited to, any lien, claim or conditional payment reimbursement demand asserted by or on behalf of Medicare or any entity claiming any right of reimbursement under the Medicare Secondary Payer Act. Releasor and Releasor's counsel of record further agree to hold harmless, indemnify and defend Released Parties and Released Parties' counsel of record from any claims arising from the failure of Releasor and/or Releasor's counsel of record to satisfy any such liens, claims, and/or Medicare conditional payment reimbursement demands. These obligations include Releasor's and/or Releasor's counsel of record's payment and/or reimbursement of any and all reasonable attorney's fees and expenses incurred by Released Parties and/or Released Parties' counsel of record in connection with the failure of Releasor and/or Releasor's counsel of record to satisfy any such liens, claims, and/or Medicare conditional payment reimbursement demands.

6.  Releasor and Releasor's counsel of record also agree to hold harmless, indemnify, and defend Released Parties and Released Parties' counsel of record with respect to any and all other claims that may be presented by Releasor, Medicare, and/or any other party acting on Releasor's or Medicare's behalf, including, but not limited to, administrative or civil fines, penalties, and interest, as well as any damages that arise out of, result from, and/or occur as a consequence of any adverse administrative or legal actions, up to and including the loss of Releasor's future Medicare benefits and/or Medicare eligibility. These obligations include Releasor's and/or Releasor's counsel of record's payment and/or reimbursement of any and all reasonable attorney's fees and expenses incurred by Released Parties' and/or Released Parties' counsel of record in connection with the failure of Releasor and/or Releasor's counsel of record to perform these obligations.

7.  The parties to this Release Agreement acknowledge that Releasor may choose to obtain a Medicare Set Aside Arrangement ("MSA") when Releasor's liability claims have been resolved. The parties further acknowledge that Released Parties' and/or Released Parties' counsel of record has/have not provided any advice, legal or otherwise, as to whether such MSA is required, needed or warranted, or how it should be structured or funded. Releasor undertakes and acknowledges complete responsibility for the implementation of any such MSA, should one be required. Releasor's and Releasor's counsel of record further agree to hold harmless, indemnify, and defend Released Parties and/or Released Parties' counsel of record from any claims or liabilities arising out of or in any way connected with any such MSA, including any and all reasonable attorney's fees and expenses incurred by Released Parties and/or Released Parties' counsel of record in connection therewith.

8.  The funding of this settlement agreement by the Released Parties is made in reliance on Releasor's and Releasor's counsel of record's agreement to fulfill the obligations set forth in

2

**For your protection, California law requires the following appear on this form:** Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

paragraph 5, 6 and 7 above. The provisions of paragraph 5, 6 and 7 above shall survive the execution of this Release Agreement and shall be enforceable at any time in the future, and Releasor specifically agrees and acknowledges that any potential Statute of Limitations defense is waived forever with regard to the above-stated duty to hold harmless, indemnify and defend and shall be binding upon Releasor's heirs, successors and assigns.

9.  The parties hereto agree that this Settlement Agreement and Release of All Claims shall be governed by the laws of the State of California.  Any dispute arising under this Settlement Agreement and Release of All Claims shall be determined in LOS ANGELES County Superior Court, Los Angeles, California.  The prevailing party to any dispute over the enforceability of this Settlement Agreement and Release of All Claims shall be entitled to its attorney's fees and costs.

10.  IT IS UNDERSTOOD AND AGREED that this payment is being made by way of accord and satisfaction of a claim which is expressly disputed and is not an admission of any liability or responsibility by the Released Parties for the occurrence described, and that the consideration is the sole and only consideration for this agreement and that no representations, promises or inducements have been made by the parties released other than as appear in this instrument.

11.  IN FURTHER CONSIDERATION of this payment, Releasor represents and warrants that no portion of any claim, right, demand, action or cause of action that Releasor has or might have arising out of the occurrence nor any portion of any recovery or settlement to which Releasor might be entitled has been assigned or transferred by Releasor to any other person or corporation in any manner, including by way of subrogation or operation of law or otherwise.  In the event that any claim, demand or suit should be made or instituted against Released Parties, Insurer and the persons or parties released herein because of any such purported assignment or subrogation or transfer, Releasor agrees to indemnify and hold harmless the Released Parties, Insurer and the persons or parties named above against any such claim, suit or demand, including necessary expenses of investigation, attorney fees and costs.

12.  IT IS EXPRESSLY UNDERSTOOD AND AGREED that, in further consideration of this sum, if Releasor has a complaint, lawsuit, cause of action, or any other legal pending action on this matter; Releasor and/or her attorneys are authorized to and shall enter a dismissal with prejudice as to the entire action.

13.  IT IS EXPRESSLY UNDERSTOOD that Releasor and Released Parties shall be solely responsible for their costs and attorney's fees, if any, and that the advice of legal counsel, if retained, has been obtained by Releasor in connection with the signing of this release.

14.  Should any portion of this Settlement Agreement and Release of All Claims be held to be unenforceable, the remaining terms shall remain in full force and effect.

15.  This Settlement Agreement and Release of All Claims may be executed in counterparts.

3

**For your protection, California law requires the following appear on this form:** Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Ex 8- 68**

16.  The parties to this Settlement Agreement and Release of All Claims agree that no party shall be deemed to have been the "drafting party"; all parties having participated and having had input into the terms of the release.

17.  This release shall bind and inure to the benefit of all parties hereto, their insurers, predecessors, successors, subsidiaries, affiliates, representatives, assigns, agents, officers, directors, partners, employees or personal representatives, past, present and future.

In Witness Whereof, the undersigned have dated and signed this agreement upon the dates stated below.

_____                    _____
(DATE)                                      MOHAMMAD SADEGH NAMAZIHKAH

Approved as to form and content.

_____
(DATE)
                                            ROBERT HINDIN & ASSOC

                                            _____
                                            ROBERT HINDIN, Esq.,
                                            Attorney for Plaintiff(s) MOHAMMAD
                                            SADEGH NAMAZIHKAH

4

**For your protection, California law requires the following appear on this form:**  Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

# EXHIBIT 9

016768

THE TRAVELERS - LIABILITY CLAIM DEP
LIABILITY CLAIM DEPARTMENT
P O BOX 650293
DALLAS      TX 75265-0293
                    SA08353

891A    90874188


TRAVELERS

DATE:              01/16/20
LOSS DATE:         08/24/17
FILE NUMBER:       152 LR FBP4662 T

DIEDERICH & ASSOCIATES
21680 GATEWAY CTR #100
DIAMOND BAR CA 91765

CLAIMANT:
MOHAMMAD S NAMAZIKHAH

ACCOUNT NAME:
TENGER INVESTMENT CO. LTD., (

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

—— EXPLANATION OF PAYMENT ——

Bodily Injury    $70000.00
TOTAL PAID       $70000.00

FULL AND FINAL RELEASE OF ANY AND ALL CLAIMS

FOR ADDITIONAL INFORMATION, CONTACT: MELISSA A SKULRAK AT (909)612-3636

UNSUMM -11
OVRPUNS2-12

016008414
DETACH CHECK

DETACH CHECK

THIS DOCUMENT HAS A RED BACKGROUND - BORDER CONTAINS MICRO PRINTING AND AN ARTIFICIAL WATERMARK - HOLD AT AN ANGLE TO VIEW

Citibank, N.A.
One Penns Way
New Castle DE 19720

TRAVELERS    Diederich & Associates    891A    90874188    82-
                                      Diamond Bar                      31
P O BOX 650293
DALLAS      TX 75265-0293
(909)612-3636

Received

JAN 2 3 2020

VOID IF NOT PRESENTED WITHI
ONE YEAR AFTER DATE OF ISSU

DATE          ACCOUNT NUMBER      FILE NUMBER
01/16/20      J99                 152 LR FBP4662 T          PAY: $***70,000.00

SEVENTY THOUSAND AND 00/100 ----------------------------------------

PAY
TO THE    ROBERT HINDIN & ASSOCIATES, APLC
ORDER OF     AND MOHAMMAD NAMAZIKHAH
016768    11,400 W. OLYMPIC #1400
SA08353   LOS ANGELES CA 90064

Douglas K. Russell
AUTHORIZED SIGNATURE

**Ex 9- 71**
**Exhibit 3**

# EXHIBIT 10

**ROBERT HINDIN AND ASSOCIATES**
A PROFESSIONAL LAW CORPORATION
CLIENT TRUST ACCOUNT
11835 W. OLYMPIC BLVD., FL 3
LOS ANGELES, CA 90064

Wells Fargo Bank, N.A.
California

16-24/1220

1/27/2020

TO THE
ER OF    Robert Hindin & Associates                                    $  **23,333.33

Twenty-Three Thousand Three Hundred Thirty-Three and 33/100********************************************************    DOLLARS

Robert Hindin & Associates

AUTHORIZED SIGNATURE

MO

Namazikhah v. ICB - Atty's Fee

⑈005918⑈  ⑆122000247⑆  20424097336⑈

---

RT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION •CLIENT TRUST ACCOUNT                    5918

Robert Hindin & Associates                          1/27/2020

Namazikhah v. ICB - Atty's Fee                              23,333.33

---

R. Hindin Client Trust    Namazikhah v. ICB - Atty's Fee                        23,333.33

RT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION • CLIENT TRUST ACCOUNT                    5918

Robert Hindin & Associates                          1/27/2020

Namazikhah v. ICB - Atty's Fee                              23,333.33

R. Hindin Client Trust    Namazikhah v. ICB - Atty's Fee                        23,333.33

SSLT104    USE WITH 91663 ENVELOPE        Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

Exhibit 4

**ROBERT HINDIN AND ASSOCIATES**
A PROFESSIONAL LAW CORPORATION
CLIENT TRUST ACCOUNT
11835 W. OLYMPIC BLVD., FL 3
LOS ANGELES, CA 90064

Wells Fargo Bank, N.A.
California

16-24/1220

1/27/2020

PAY TO THE
ORDER OF       Robert Hindin & Associates

$ **3,650.00

Three Thousand Six Hundred Fifty and 00/100************************************************************    DOLLARS

Robert Hindin & Associates

AUTHORIZED SIGNATURE

MEMO
Namazikhah v. ICB - Costs

⑈005919⑈ ⑆122000247⑈ 2042409736⑈

---

ROBERT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION •CLIENT TRUST ACCOUNT                    591

Robert Hindin & Associates                                                          1/27/2020
                        Namazikhah v. ICB - Costs                                                        3,650.00

R. Hindin Client Trust    Namazikhah v. ICB - Costs                                                 3,650.00

ROBERT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION • CLIENT TRUST ACCOUNT                591

Robert Hindin & Associates                                                          1/27/2020
                        Namazikhah v. ICB - Costs                                                        3,650.00

R. Hindin Client Trust    Namazikhah v. ICB - Costs                                                 3,650.00

PRODUCT SSLT104    USE WITH 91663 ENVELOPE        Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop    Ex 10- 74

# EXHIBIT 11

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 5993 |
| **Date Posted** | 02/28/20 |
| **Check Amount** | $17,500.00 |



ROBERT HINDIN AND ASSOCIATES
A PROFESSIONAL LAW CORPORATION
CLIENT TRUST ACCOUNT
11833 W. OLYMPIC BLVD., FL 8
LOS ANGELES, CA 90064

Wells Fargo Bank, N.A.
California
16-24/1220

5993

February 20, 2020

PAY TO THE
ORDER OF   Beverly Hills Center for Arthroscopic and Outpatient Surgery        $      17,500.00

**Seventeen Thousand Five Hundred Dollars and Zero Cents**          DOLLARS

MEMO   Full and Final Mohammad Namazikhah
Both Cases: 12/11/2013 & 8/24/2017

AUTHORIZED SIGNATURE



For your security, information like account numbers, signatures, and the ability to view the backs of checks
have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

⌂ Equal Housing Lender

# EXHIBIT 12

Ex 12- 77

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 5992 |
| **Date Posted** | 03/04/20 |
| **Check Amount** | $800.00 |



ROBERT HINDIN AND ASSOCIATES
A PROFESSIONAL LAW CORPORATION
CLIENT TRUST ACCOUNT
11845 W. OLYMPIC BLVD., FL 8
LOS ANGELES, CA 90064

Wells Fargo Bank, N.A.
California
16-24/1220

5992

February 20, 2020

PAY TO THE
ORDER OF   Shirin Hekmat                                    $   800.00

**Eight Hundred Dollars and Zero Cents**                                DOLLARS

MEMO   Full and Final Mohammad Namazikhah
Both Cases: 12/11/2013 & 8/24/2017                          AUTHORIZED SIGNATURE



For your security, information like account numbers, signatures, and the ability to view the backs of checks have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

⌂ Equal Housing Lender

# EXHIBIT 13

**Ex 13- 79**

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 6008 |
| **Date Posted** | 02/28/20 |
| **Check Amount** | $12,000.00 |





For your security, information like account numbers, signatures, and the ability to view the backs of checks have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

☎ Equal Housing Lender

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 6005 |
| **Date Posted** | 04/06/20 |
| **Check Amount** | $5,900.00 |





For your security, information like account numbers, signatures, and the ability to view the backs of checks have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

⌂ Equal Housing Lender

**Ex 13- 81**

# EXHIBIT 14

# WELLS FARGO

# Check Details

| | |
|---|---|
| **Check Number** | 5979 |
| **Date Posted** | 02/20/20 |
| **Check Amount** | $5,000.00 |





For your security, information like account numbers, signatures, and the ability to view the backs of checks have been removed from the images.
You can see full or partial fronts and backs of the images by using the link at the top of the window.

⌂ Equal Housing Lender

**ROBERT HINDIN AND ASSOCIATES**
A PROFESSIONAL LAW CORPORATION
CLIENT TRUST ACCOUNT
11835 W. OLYMPIC BLVD., FL 3
LOS ANGELES, CA 90064

Wells Fargo Bank, N.A.
California
16-24/1220

1/27/2020

PAY TO THE
ORDER OF    Atkinson-Baker Court Reporter                                $ **3,653.59

Three Thousand Six Hundred Fifty-Three and 59/100**************************************************** DOLLARS

Atkinson-Baker Court Reporter
500 North Brand Bl, Third Floor
Glendale, CA 91203-4725

MEMO
Raymond Aver - Invoice #s AD088B7, AD0614B, AD0898C

AUTHORIZED SIGNATURE

⑆005920⑆ ⑆122000247⑆ 2042409736⑆

---

ROBERT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION •CLIENT TRUST ACCOUNT

5920

Atkinson-Baker Court Reporter                    1/27/2020
            Raymond Aver - Invoice #s AD088B7, AD0614B, AD0898C    3,653.59

R. Hindin Client Trust    Raymond Aver - Invoice #s AD088B7, AD0614B,                3,653.59

---

ROBERT HINDIN AND ASSOCIATES • A PROFESSIONAL LAW CORPORATION • CLIENT TRUST ACCOUNT

5920

Atkinson-Baker Court Reporter                    1/27/2020
            Raymond Aver - Invoice #s AD088B7, AD0614B, AD0898C    3,653.59

R. Hindin Client Trust    Raymond Aver - Invoice #s AD088B7, AD0614B,                3,653.59

PRODUCT SSLT104    USE WITH 91663 ENVELOPE    Deluxe Corporation 1-800-328-0304 or www.deluxe.com/shop

**Ex 14- 84**

6242541201

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): **FIRST AND FINAL APPLICATION BY ROBERT HINDIN & ASSOCIATES, APLC, A PERSONAL INJURY LAW FIRM, FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF COSTS FOR LITIGATING DEBTOR'S PERSONAL INJURY CLAIMS; DECLARATIONS OF ROBERT HINDIN AND MOHAMMAD S. NAMAZIKHAH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/9/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 12/9/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (**state method for each person or entity served**)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 12/9/2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/9/2021 | Daniel Lavian | /s/ Daniel Lavian |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

## 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

- **Eric V Anderton    eanderton@catanzarite.com, bphillips@catanzarite.com**
- **Raymond H. Aver    ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com**
- **Sumit Bode    sumit.bode@americaninfosource.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **Theron S Covey    theronscovey@hotmail.com, sferry@raslg.com**
- **Dane W Exnowski    dane.exnowski@mccalla.com, bk.ca@mccalla.com,mccallaecf@ecf.courtdrive.com**
- **Sean C Ferry    sferry@raslg.com, sferry@ecf.courtdrive.com**
- **M. Jonathan Hayes    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com**
- **Frances M O'Meara    fomeara@fmglaw.com, mhirota@fmglaw.com;nsands@fmglaw.com;cvillareal@fmglaw.com**
- **Veronica A Pacheco    BDBKInquiry@wellsfargo.com, BDBKInquiry@wellsfargo.com**
- **Sheila M Pistone    sheila@pistonelawoffice.com, sheilapistone@yahoo.com**
- **David Seror (TR)    aquijano@bg.law, C133@ecfcbis.com;mgalvan@bg.law**
- **Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Diane Weifenbach    diane@attylsi.com, bankruptcy1@attylsi.com**
- **Nancy H Zamora    zamora3@aol.com**

## 2. SERVED BY UNITED STATES MAIL:

Label Matrix for local noticing
0973-1
Case 1:15-bk-13134-MB
Central District of California San Fernando
Valley
Thu Dec 9 17:48:04 PST 2021
U.S. Bank National Association as Legal
Titl
3000 Kellway Dr. Ste 150
Carrollton, TX 75006-3357

San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

Business Card
P.O. Box 15796
Wilmington, DE 19886-5796

WELLS FARGO BANK, N.A.
P.O. Box 29482
Phoenix, AZ 85038-9482

FRANCHISE TAX BOARD
BANKRUPTCY UNIT
PO BOX 2952
SACRAMENTO CA 95812-2952

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

GHORBANIAN DDS INC
C/O MOHAMMAS ALI TALAIE ESQ
800 WEST 6TH STREET STE 1200
LOS ANGELES CA 90017-2715

LOS ANGELES CITY ATTORNEY'S OFFICE
ATTN WENDY LOO
200 N MAIN ST STE 920
LOS ANGELES CA 90012-4128

Kosmas Pappas, D.D.S.
10106 Adams Avenue
Huntington Beach, CA 92646-4907

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Law Offices of Raymond H. Aver
A Professional Corporation
10801 National Boulevard, Suite 100
Los Angeles, California 90064-4140

United Airlines, Inc.
900 Grand Plaza Drive NHCCR
Houston, TX 77067-4323

U.S. Bank, N.A.
425 Walnut Street
Cincinnati, OH 45202-3930

A-B Dental Center, Inc.
c/o Catanzarite Law Corporation
2331 West Lincoln Avenue Anaheim, CA
92801-5103

WELLS FARGO BANK NA
CUSTOMER SERVICE
POB 348750
SACRAMENTO CA 95834-8750

UNITED STATES OF AMERICA on behalf of the
IN
300 N. Los Angeles Street, Room 7211
Attn: Najah Shariff
Los Angeles, CA 90012-3342

U.S. BANK NATIONAL
ASSOCIATION
14841 Dallas Parkway, Suite
300
Dallas, TX 75254-7883

Wells Fargo Bank, N.A.
SBL
P.O. Box 29482 Phoenix, AZ 85038-9482

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Bank of America
P.O. Box 15019
Wilmington, DE 19850-5019

(p)JPMORGAN CHASE BANK N A
BANKRUPTCY MAIL INTAKE TEAM

Zamora & Hoffmeier
633 W 5th Ste 2600
Los Angeles, CA 90071-2053

(p)BANK OF AMERICA
PO BOX 982238
EL PASO TX 79998-2238

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA PA 19101-7346

Kosmas Pappas, D.D.S.
C/O Catanzarite Law Corporation
2331 West Lincoln Avenue Anaheim,
CA 92801-5103

Old Republic Default Management Ser
P.O. Box 250
Orange, CA 92856-6250

U.S. Bank, National Association
3121 Michelson Drive, Suite 500
Irvine, CA 92612-7673
Wells Fargo Bank, N.A.
Business Direct Division
P.O. Box 29482

David Seror (TR)
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367-4911

SACRAMENTO CA 95834-8750
Kosmas Pappas
c/o Catanzarite Law Corporation
2331 West Lincoln Avenue Anaheim, CA 92801-5103

Mohammad Sadegh Namazikhah
16661 Ventura Boulevard, Suite 606
Encino, CA 91436-1982

**The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4)**

Bank of America
P.O. Box 982235
El Paso, TX 79998-2235

(d)Bank of America
P.O. Box 982238
El Paso, TX 79998-2238

Chase
P.O. Box 24696
Columbus, OH 43224

Internal Revenue Service
300 North Los Angeles Street, M/S 5022c/o
Los Angeles, CA 90012

U.S. Bank National Association

U.S. Bank Home Mortgage
A Division of US Bank NA
4801 Frederica St
Owensboro, KY 42301